WEAVER *et al. v.* CONGER *et al.*

The facts set forth in the complaint, in this cause, are sufficient to sustain the action.

Where a demurrer to the whole complaint is interposed, and the same is not good as to all, the demurrer should be overruled.

There was no misjoinder of cause of action in this case.

When a defendant pleads another suit pending between the same parties, and for the same cause of action, and it appears that no summons was ever issued upon the complaint, and that there was no voluntary appearance on the part of the defendant in such suit: *Held*, that there was no suit pending, and consequently no misjoinder of causes of action.

Where parties have appropriated the prior right to the use of the water of a stream, by the commencement and partial completion of a ditch and flume, they have the right to use so much of the waters of the stream as are necessary to preserve their flume from injury, while in the process of construction.

APPEAL from the District Court of the Fourteenth Judicial District, County of Sierra.

This was an action to recover damages for the diversion of water from, and injury to, the flume and ditch of plaintiffs, and for an injunction.

The complaint in this case occupies a space of fourteen closely-written pages of the record, and abounds in verbosity and repetition. It contains four counts:

The first count alleges that on the fifth day of July, 1853,

plaintiffs, and those under whom they claim, were the owners, and entitled to the possession, of a certain water-right and privilege styled the "Memphis and Orleans Race Company," by location, right, prior possession, and occupancy, which said franchise was made, and is in progress of construction, to carry water from the Middle Fork of the Yuba River and its tributaries above the point of location, and the small stream along the line of the route, and also from Cañon Creek, a tributary of the South Fork of Yuba River, and also from the lakes, so called, being tributary to said Middle Yuba River, etc. Plaintiffs having so located and possessed, etc., the defendants, on the seventh day of April, 1855, and on divers other days and times between that day and the day of filing this complaint, entered into and upon the same, and forcibly and unlawfully broke, damaged, and injured the said race, ditch, and canal, upon which the said waters are to run, thereby injuring and damaging the works and franchise, and rendering the same useless to plaintiffs; and by and through divers logs, trees, stones, gravel, etc., caused by the defendants to flow, fall, etc., upon, over, and through, the said race; in consequence of which said acts of defendants the lives of plaintiffs and their employees are greatly endangered, etc.; and to repair the breakage requires great additional work, costs, etc.,—to the damage of plaintiffs of $20,000.

The second count charges that the defendants, on the day and year last aforesaid, and on divers other days, etc., by blasting rocks, uprooting divers logs, stones, and trees, etc., and causing them to fall against said race of plaintiffs, broke and injured the same, and rendered the same useless, etc.,—to the damage of plaintiffs of $20,000.

Third count: Plaintiffs being possessed and entitled to the premises aforesaid, lands and appurtenances, the said defendants on, etc., with force and arms broke and entered several closes of plaintiffs, and then and there forced and broke open and broke to pieces, damaged, and spoiled said premises, to wit: said race, etc., and thereby as well as by forcibly and injuriously obstructing the water flowing therein, and forcibly and injuriously diverting the water accustomed to flow therein, and greatly damaging said premises, etc., defendants subverted, dug up, and removed, the said earth, timber, wood, and lumber, and thereby absolutely dammed up and diverted the waters of the South Fork of the Middle Yuba River, which was wont to flow in and through the race of plaintiffs—thereby damaging and injuring said plaintiffs, etc., in the sum of $20,000.

Fourth count: Plaintiffs, on or about the fifteenth day of June, 1853, intending to use the waters of the South Fork of the Middle Yuba River, above the falls in each of the forks, the waters tributary thereto, and the waters of Cañon Creek, for the purpose of a canal for mining purposes, did proceed to claim and

locate the right to the use of said waters, and did commence the erection of a flume and ditch, etc.   They also aver that they built a steam saw-mill on the line of the work, and expended over $100,000.   On the first day of May, 1856, the flume was nearly completed from a point about six miles below the upper termination of the flume, to the South Fork of the Middle Yuba River, and it became necessary, in the prosecution of the work, to use the waters of said stream.   The defendants, well knowing the premises, did on that day, by the erection of dams, divert the waters of said stream, and prevent them from flowing into the flume of plaintiffs, and did also break down and destroy a portion of plaintiffs' flume, and that defendants still continue such obstruction and diversion of said waters, and threaten to continue the same.   The complaint prays for an injunction.

The defendants demurred to this complaint, and assigned two causes of demurrer :

1. That the complaint does not state facts sufficient to constitute a cause of action.

2. Misjoinder of action, or several causes of action, have been improperly joined in this : that a cause of action for injuries done to the plaintiffs' flume, or ditch, to recover damages, is joined to a cause of action for the purpose of enjoining and restraining the diversion of the water by defendants ; and, secondly, a cause of action arising from an alleged trespass, is joined to a suit in equity for an injunction, the two actions having in point of fact no connection with each other.

The demurrer was overruled, and ·defendants excepted.   Defendants then filed their answer, setting up :

1. Another action pending identical with and the same as the present action.

. 2. Denying the jurisdiction of the Court, of the subject-matter, on the ground that the cause of action occurred in the county of Nevada.

The case was tried before a jury, the plaintiffs had a verdict and judgment, and the defendant appealed.

The additional facts necessary to understand the points decided, are set forth in the opinion of the Court.

*John R. McConnell* for Appellants.

The demurrer to the complaint ought to have been sustained by the Court.

The complaint, in this case, is the most irregular in form and substance it has ever been our lot to witness.   To say that it is incomprehensible, is to pay it a compliment.   It is worse—it is sheer nonsense.

The first count states that the plaintiffs " were entitled to and in the possession of a certain water-right and privilege * * *, called the Memphis and Orleans Race Company, which said fran-

chise and right was made, designed * *, and is now in progress of construction."

Who ever heard, before, of a franchise or right being in " progress of construction ?"

Again, it states that " the said plaintiffs having so located and possessed, and being so entitled to the said franchise, right, and easement, etc., the defendants, on the seventh day of April, A. D. 1855, in the counties aforesaid * *, *entered into and upon the same*, and then and there, forcibly and unlawfully, broke, damaged, and injured the *said race*, ditch, and canal."

What " said ditch " is intended here ? The complaint has not before mentioned any ditch, but only a right and franchise. And it says that the " defendants entered into the same;" that is, the same franchise, right, and easement. Who ever heard, before, of a man entering a franchise, or mere right and easement, with force and arms ?

It then proceeds, at enormous length, to detail special injuries; such as the falling of logs, trees, stones, upon the race or ditch of the plaintiffs, all caused by the defendants.

So incongruous and inconsistent a mass of verbiage never before came under the observation of this Court. It more resembles the words and expressions with which the sick man, in his dreams, is apt to clothe the unnatural and rapidly changing images which flit through his brain, than it does a grave and solemn legal pleading. Who can tell what the nature of the injury complained of is?

Is it for an injury to the easement and franchise, or to the ditch or flume, that we are called to answer?

[The counsel argued the insufficiency of the complaint at great length, and referred to the following authorities : Bigelow et al. *v.* Gove et al., 7 Cal., 133; McCann *v.* Sierra Co., Ib., 121.]

The Court erred in awarding judgment of *respondeat ouster* upon the defendants' plea in abatement.

The plea in abatement was to the effect that there was another suit then pending for the same cause of action. We proved our plea by the production of a complaint filed in the clerk's office of the District Court of Nevada county, which is word for word the same as the complaint we have just been considering.

The rule is thus stated by Chitty : " The plaintiff can not, after a plea in abatement of the pending of a prior suit, avoid the effect of the plea by discontinuing the first action, which was pending at the time of the plea." 1 Chitty's Pl., 454; 1 Salk., S. 29; 2 Lord Ray., 1014.

In the Commonwealth *v.* Churchill, 5 Mass., 174, the Court said that " the merits of a plea, so far as they depend upon the allegation of facts, must be determined by the law and the facts

existing at the time when the plea is pleaded. And I do not recollect any case where the plea can be confessed and avoided by a posterior fact done by a party not pleading it."

The question in that case was, whether a nonsuit, in the prior action, could be replied to the plea in abatement, the nonsuit having been rendered after plea pleaded. After determining that "it could not, the Court proceeds to say that it is very well known that a man can not bring a second action for the same cause for which he has a prior action pending." And the reason for this rule is stated to be that *Nemo debet bis vexari, si constet curiæ quod sit pro una et eadem causa.*

In a note to this case, is cited an ancient case from the Year Books, decided in 39 Henry VI. Defendant pleaded in abatement the pendency of a former suit, etc. Objected to the plea that it ought to have been averred that the prior suit was still pending, but the Court said no, that it was sufficient, if it was averred that the first suit was pending when the second was instituted; and that the plea was good, although the first suit was abated before it was pleaded, provided it had not been abated before the bringing of the second suit. This doctrine is recognized in Sparry's case, 5 Cooke, 61, and in a great number of modern English and American cases. See Frogg *v.* Long, 3 Dana's Ky Rep., 151, and Parker *v.* Colcord, 2 New Hampshire Rep., 36.

In New York, the decisions have not been entirely uniform. In Marston *v.* Lawrence, 1 Johns. Cases, 397, the Court held that the plaintiff might evade the operation of a plea of former suit pending, by entering a *nil capiat per brevo* in the first, before a replication to the plea. But the more recent decisions of that learned Court have conformed to the earlier rule. Embree *v.* Hamia, 5 Johns. Rep., 101.

No brief in the record for Respondents.

BURNETT, J., delivered the opinion of the Court—TERRY, C. J., concurring.

1. The complaint was very loosely drawn, and contains much useless verbiage; but taking it altogether, the facts stated were sufficient to sustain an action. The demurrer was to the whole complaint; and, not being good as to all, was properly overruled. There was no misjoinder of causes of action. (Gates and others *v.* Kieff and others, 7 Cal. Rep., 124.) The decision in the case referred to would seem to conflict with the decision in the case of Bigelow *v.* Gove, (7 Cal. R., 133.) The report of this latter case is so full as to give a clear idea of the ground upon which the decision is predicated. Bigelow & Co. alleged, substantially, that they were in possession of certain mining-claims, giving the exact metes and bounds; that the defendants entered into and

held adverse possession of a portion of these claims, giving an exact description, by metes and bounds, of the portion so held adversely; that defendants had taken away, and were still taking away, from the portion held adversely, large quantities of gold-bearing earth, etc.; and that the defendants threatened to continue the trespass, not only upon the portion held adversely, but upon that portion then in possession of plaintiffs, and upon which no trespass had ever been committed. The prayer for ·the injunction, pending the litigation, was general, and was not restricted to that portion of the claims held adversely by defendants. We thought there was a misjoinder, as the equitable relief asked related to all the claims, and the legal to only a part. Had the plaintiffs sought no remedy against defendant for mere threatened trespass upon premises then in possession of plaintiffs, and upon which no trespass had ever been committed, the complaint would have been good. (Merced Mining Co. v. Fremont, 7 Cal., 130.)

2. There was no error in the decision of the Court upon the plea in abatement. It did not appear that any summons had ever issued upon the complaint, or that there had been any voluntary appearance on the part of the defendants. There was, therefore, no suit pending; and the defendants failed to sustain their defence that there was another suit pending between the same parties, for the same cause of action. (Code, § 22.)

3. The rights of the parties, as to priority of appropriation, were fully settled by this Court in the former case between the same parties. (6 Cal. R., 548.) The plaintiffs having the prior right to the waters of the stream, had the right to use so much of it as was necessary to preserve their flume from injury while in process of construction; otherwise, they might never have been able to enjoy the right to which they were entitled.

4. The other assignments of error are not well taken.

We find no error in the judgment of the District Court, and the judgment is, therefore, affirmed.