## WILSON *v.* ATLANTA, KNOXVILLE AND NORTHERN RAILWAY COMPANY.

1. A plea in abatement, based upon the pendency of a former action, which alleges that the court in which this action was brought " has jurisdiction of the case, . . under the allegations of the declaration " therein filed, sufficiently avers that the court referred to has jurisdiction to entertain the action.
2. Whether or not a court in which such a declaration has been filed and duly served actually has jurisdiction to dispose of the case upon its merits is a question for its own determination, and not for that of another court in which a second suit by the same plaintiff against the same defendant upon the same cause of action is brought.

Argued February 11,— Decided April 3, 1902.

Rehearing denied April 11, 1902.

Action for damages.    Before Judge Reid.    City court of Atlanta.    January 21, 1901.

*Clay & Blair* and *Hoke Smith & H. C. Peeples,* for plaintiff.
*Smith, Hammond & Smith,* for defendant.

LUMPKIN, P. J.    Mrs. Ludie M. Wilson as administratrix of her deceased husband, George T. Wilson, brought in the city court of Atlanta, against the Atlanta, Knoxville and Northern Railway Company, an action for the homicide of her intestate, which she in her petition alleged had been tortiously caused by the defendant in the State of Tennessee.    The company filed a plea in abatement, alleging that " at the time of the filing of this suit the said plaintiff was prosecuting and is still prosecuting an action in the superior court of Cobb county, Georgia, for the same cause and against the same party," that "said suit was duly served upon the defendant in said case, and the same is now pending in said court undisposed of," and that " the allegations in the declaration so pending in Cobb superior court aforesaid refer to and describe the same accident, and in all respects set up the same cause of action."    By an amendment to this plea the defendant alleged " that the superior court of Cobb county has jurisdiction of the case heretofore filed therein by said plaintiff against said defendant, under the allegations of the declaration in said case."    In a second amendment to the plea in abatement it was averred that the plaintiff's petition in the case pending in Cobb superior court alleged that " the Atlanta, Knoxville & Northern Railway Co. is a corporation doing a general railroad business under a charter granted by the State of Georgia," and that " the principal and general offices of said Atlanta, Knoxville & Northern Railway Company are situated in the city of Marietta, in said county of Cobb."    The plaintiff .demurred to the plea in abatement as originally filed, on the ground that " it failed to allege that the court wherein the former suit was pending had jurisdiction of the action," and to the plea as amended, on the ground " that there was still no specific allegation of jurisdiction in the court wherein said former suit was pending, and that as amended the plea was still insufficient."    These demurrers were overruled.    By consent of counsel all questions of law and fact arising upon the issue made by the petition and plea in the present case were determined by the court without the intervention of a jury.    The plaintiff introduced in evidence a certified copy of a plea

to the jurisdiction, filed by the defendant in the superior court of Cobb county, in which it was alleged that "the principal office of said defendant is not in Marietta, Cobb county, Georgia," but its principal office, "established by its charter, is in the county of Fulton," and "the superior court of Fulton county has jurisdiction of said case." The plaintiff also introduced evidence showing that it was by the charter of the defendant, which was granted by the secretary of State, declared that its principal office "was to be in the city of Atlanta, Fulton county, Georgia." The defendant then introduced evidence showing that the plaintiff's action pending against it in Cobb superior court was of the character set forth in its plea in abatement, and that it had been duly served therein. It was admitted by the plaintiff that the suit in the superior court of Cobb county was still pending at the time of the trial of the present case. After argument the court ruled out all of the evidence which had been introduced by the plaintiff, the same having been objected to when offered, and entered a judgment dismissing the action. Thereupon the plaintiff sued out a bill of exceptions, assigning error upon the overruling of her demurrers to the defendant's pleadings, the ruling out of the evidence just mentioned, and the dismissal of her suit. In the view we take of the case it turns upon and is absolutely controlled by the propositions of law announced in the headnotes, the correctness of which we will now undertake to establish. Before beginning the discussion, it is proper to remark that as the homicide complained of did not occur in any county of this State, no statutory provision thereof with relation to bringing a suit of this nature in the county wherein the cause of action originated is applicable.

The doctrine that a defendant should not be vexed by two or more pending suits for the same cause of action is universally recognized, and a plea in abatement is the proper remedy for obtaining the benefit of that doctrine. It is thus stated in our Civil Code, § 3737: "No suitor is entitled to prosecute two actions in the courts of this State at the same time, for the same cause and against the same party; and in such a case the defendant may require the plaintiff to elect which he will prosecute, if commenced simultaneously; and the pendency of the former is a good defense to the latter, if commenced at different times." Courts differ only as to what circumstances call for the abatement of a subsequent action.

There is, in Foster *v.* Napier, 73 Ala. 595, an elaborate discussion of the doctrine by Chief Justice Brickell, who on page 603 states the reasons on which it rests, and cites authorities in support of the proposition that a plea in abatement should be sustained notwithstanding it appears that the first suit was prematurely brought, inasmuch as " when a defendant is twice impleaded by the same plaintiff, for the same thing, the oppression and vexation is not matter of fact; it is a conclusion of law, and is not dependent upon an inquiry into the actual circumstances of the two cases." Attention is also called to the reasoning of this illustrious jurist, on page 605. As will be observed, he mentions the fact that there are authorities holding that "a prior suit, which can not be made effective and available, is not pleadable in abatement of a second suit for the same cause"; but adds that the doctrine thus advanced is inconsistent with the English authorities, and seems to have originated in the courts of Connecticut. The distinguished Chief Justice further remarks that though this doctrine has been followed in other States, it was, after thorough consideration, repudiated by the Supreme Court of New Hampshire. See Gamsby *v.* Ray, 52 N. H. 513. What may be termed "the Connecticut rule" is fully expounded, approved, and adopted in Downer *v.* Garland, 21 Vt. 365 — 366. Kellogg, J., says, "In New York the rule seems to have been somewhat different," and refers to New York cases holding, "professedly upon English authority," that the plaintiff may dismiss his first suit after the filing of a plea in abatement to the second, and thus sustain a "replication of nul tiel record." The learned judge does not, however, undertake to uphold the correctness of this " New York rule." The following is taken from 1 Enc. Pl. & Pr. 766 — 767: " Where the court in which the former suit is pending has no jurisdiction of the subject-matter, or the suit or proceeding is otherwise so defective as to be ineffectual, its pendency will not abate a second suit between the same parties for the same cause of action." And see 8 Am. & Eng. Enc. Law (1st ed.), 551 — 552. A statement of the Connecticut rule, substantially the same as that set forth in the language just quoted, is embraced in our Civil Code, § 5094, which reads as follows: " A former recovery, or the pendency of a former suit for the same cause of action, between the same parties, in the same or any other court that has jurisdiction, shall be a good cause of abatement; but if the first action is so defective that no

recovery can be possibly had, the pendency of a former suit will not abate the action." As this language is identical with that appearing in the Code of 1863, § 3407, it would seem that the codifiers intended to adopt the Connecticut rule, though as will appear from § 2835 of that Code (now § 3737 of the Civil Code), the New York rule was not sanctioned; for in declaring that two suits for the same cause of action should not be prosecuted at the same time by the same plaintiff against the same defendant, the former was given the right to elect only as to suits "commenced simultaneously," and it was provided that the pendency of the former suit constituted a good defense to the latter one. See, in this connection, *Singer* v. *Scott*, 44 *Ga.* 659, in which it was held that a plaintiff could not escape the effect of a plea in abatement by dismissing the previous action.

As the Connecticut rule has apparently been adopted in this State, it is of the utmost importance to inquire how it was, at the time of its adoption here, understood and applied in Connecticut and in other States in which it had been given effect. The parent case is perhaps that of Durand v. Carrington, 1 Root, 355. There it was held that a plea in abatement, based on the ground of lis pendens, was not sustainable where an "attachment was not legally served so as to hold the estate taken thereby; and the plaintiff, discovering said defect," sued out another writ and abandoned the first. In Ward v. Curtiss, 18 Conn. 290, wherein it was held that the plea in abatement was not good, it appeared that a writ of attachment was served, but not returned into court because the plaintiff discovered that the debt sued on was not due; and afterwards, the officer having erased his entry of service, the same writ was again prosecuted. In Quinebaug Bank v. Tarbox, 20 Conn. 510, it was held that a second writ of error might be prosecuted where the first for obvious defects would have been ineffectual and was for that reason abandoned. Hatch v. Spofford, 22 Conn. 485, was a case in which the plea in abatement set up that the first suit was pending in another State, and the plea was denied. The ruling in Prosser v. Chapman, 29 Conn. 516, was, that where the "prior suit was no otherwise defective than in the misjoinder of counts in the declaration, . . the writ in that suit could have been amended by striking out one of the counts," that, accordingly, that suit was "not to be regarded as an ineffective one," and therefore the second suit

"was a vexatious one, and abateable on the ground of the pendency of the other." A similar ruling was made in Atkinson *v.* State Bank, 5 Blackf. (Ind.) 84, wherein it was held: "In an action of assumpsit against A., the pendency of a former suit for the same cause brought by the plaintiff against A. & B., though there be a misjoinder of defendants, may be pleaded in abatement." In Hill *v.* Dunlap, 15 Vt. 645, it was held that where suit is commenced "by process which is defective," and notice given of its discontinuance before service of process in a "fresh suit," the latter action should not be abated. The precise point ruled in the Vermont case cited supra, that of Downer *v.* Garland, was, that where the process in an action was defective because issued by a justice of the peace who was the attorney at law of the plaintiff, and, upon this fact being pleaded, the plaintiff gave notice of his intention to abandon that action, the second suit should not be abated. In Reynolds *v.* Harris, 9 Cal. 338, the rule was laid down that the plea was not good "where the complaint in the former suit is so defective that a judgment rendered thereon would be a nullity." The California court also held that where no summons was issued in a pending suit, and no voluntary appearance was made by the defendant named in the complaint, a plea in abatement was not well founded. Weaver *v.* Conger, 10 Cal. 233. See also Primm *v.* Gray, Id. 522. The Connecticut rule is apparently recognized in Langham *v.* Thomason, 5 Tex. 127, and perhaps in Cornelius *v.* Vanarsdallen's admr., 3 Pa. St. 434; but in each of these cases the decision was put on the ground that there were not two cases pending in which the plaintiff was the same. In Stroh *v.* Uhrich, 1 Watts & S. (Pa.) 57, it was held that the pendency of an appeal from a decision rendered by a court without jurisdiction of the subject-matter of a suit could not operate to defeat a second action upon the same demand. And a similar ruling was made in Rood *v.* Eslava, 17 Ala. 430.

The foregoing list of cases will, though we do not undertake to say that the same is exhaustive, suffice, we think, to show that prior to 1863 there was no general tendency on the part of the American courts to virtually abrogate the well-known and thoroughly settled doctrine of the common law bearing on the subject under discussion, or to extend beyond its legitimate application the modification engrafted upon the English rule by the Connecticut

court. And it appears from more recent decisions that the courts of this country, with possibly a few exceptions, have not yet indicated such a tendency. A plea in abatement has been held bad where void process was issued in a former suit (Chicago Ry. Co. v. Campbell, 5 Kans. 423); where no legal service was had in the latter suit before the discontinuance of the former (Kirby v. Jackson, 42 Vt. 552); where the first action was void because prematurely brought, and this point had been decided by the Supreme Court and the case remanded to the lower court before the second action was commenced (Blackwood v. Brown, 34 Mich. 4); where an action was instituted against a school officer to compel him to pay over certain moneys in his hands, and, pending an appeal by him from a judgment therein rendered, a mandamus, based upon his breach of duty as a public officer in failing to pay over those moneys and others for which he had become liable after the bringing of the action, was sued out (Craig v. Dougherty, 45 Mo. 294); and where the first suit was brought without giving the requisite statutory notice, which omission appeared on the face of the petition (Griffin v. Board of Comrs., 71 Miss. 767), or without making necessary statutory demand as a condition precedent to entering suit (O'Malia v. Glynn, 42 Ill. App. 51). It is true that in the Missouri case cited supra, Currier, J., in delivering the opinion of the court, does say that "the modern practice is not to infer, as matter of law, that the suit is vexatious and unnecessary, from the mere fact of the pendency of a prior suit between the same parties, founded on the same cause of action, but to proceed, upon inquiry, into the actual circumstances of the two cases, and then determine, as matter of fact, whether the subsequent suit is unnecessary and vexatious." The point actually decided was, however, as indicated by our brief reference to the case, and there was no need to go to the extent set forth in the language quoted from the opinion. In Minniece v. Jeter, 65 Ala. 223, it was said that a plea in abatement should prevail, "unless the affidavit or process by which" the pending suit "was commenced was void;" and that if the person issuing the process was without power to act, this was "a subject for a replication to the plea in abatement" (p. 231). In Wolf v. Great Northern Ry. Co. (Minn. 1898), 75 N. W. 702, the plaintiff was permitted, in reply to such a plea, to show by extrinsic evidence that the pending prior suit was brought without his sanction or authority. The

decision in National Express Co. *v.* Burdette, 7 App. D. C. 551, was to the effect that a suit should not be abated when, by way of a demurrer to a replication filed by the plaintiff to the defendant's plea in abatement, the latter admits "the first action is ineffectual, or so defective that no recovery can be had, and the second suit is necessary for securing the plaintiff's rights." In Phillips *v.* Quick, 68 Ill. 324, it appeared that the court in which the first suit was filed had no jurisdiction of the subject-matter.

There is a Virginia case which seems to be out of line with the above-cited authorities. See Norfolk & Western R. R. Co. *v.* Nunnally's admr., 88 Va. 546. It there appeared that when the first suit was called, the defendant company moved, for certain reasons, to quash the process issued therein, and its motion having been overruled, it filed exceptions. The plaintiff, apparently fearing the outcome of these exceptions, hastened to file another suit, so as to come within the statute of limitations, and subsequently dismissed the first suit. Thereupon the company filed a plea in abatement, setting up the pendency of the first action at the time the second was brought. The Supreme Court of Appeals characterized the company's latter move as "inconsistent," and held that " as the plaintiff dismissed his first suit as soon as he safely could, and was compelled to bring the second action to avoid the bar of the statute, the court exercised a wise judicial discretion in striking out the plea" (pp. 549, 550). The reviewing court did not expressly undertake to say the process in the first suit was void or fatally defective, nor to rule upon this question at all, unless the fact that it spoke of the plaintiff's being " compelled to bring the second action to avoid the bar of the statute" was the equivalent of a ruling on this point — an inference hardly justified; for, if the process in the first suit was void, the plaintiff could, as matter of right, under the Connecticut rule, have brought his second action, and in refusing to abate the same the trial court could not logically be said to have " exercised a wise judicial discretion." This decision, therefore, would seem unwarranted, save under the " New York rule" above mentioned, or an entirely new rule of which the Virginia court can justly claim to be the original discoverer. Certain it is that the Supreme Court of Georgia has not heretofore established such a precedent with a view to administering · what might be termed " natural justice." The Connecticut rule, as ex-

pressed in our code, has been three times given recognition : *Rogers* v. *Hoskins*, 15 *Ga.* 270 ; *Heath* v. *Bates*, 70 *Ga.* 633 ; *Gilmore* v. *Ga. R. Co.*, 93 *Ga.* 482.　In the first and last of these cases it appeared on the face of the record that a recovery in the original suit was legally impossible..　In the other case the decision was merely that a scire facias was not to be regarded as an independent " suit."　Nor is this court as at present constituted disposed to give the Connecticut rule a wider application than it was intended to have by the court which framed it, or to enlarge its scope as expounded by the Vermont court when (21 Vt. supra) it was adopted in that State, or as it must have been understood by our codifiers when they gave it their approval in 1863.　The Alabama and New Hampshire cases cited at the beginning of this discussion point out the absolute necessity of the doctrine of the common law as to vexatious suits.　The case in 21 Vt. shows wherein the English rule was, perhaps, too harsh, and needed modification, but not that it deserved practical abolition.　To unduly extend the Connecticut rule would be going to the opposite extreme.　That is to say, the English rule charged the plaintiff with the necessity of having *a knowledge of the law* as to when to sue, where to sue, and how to sue.　If he made experiments he did so at his peril, and could not bring a second suit without first electing to dismiss one already brought, regardless of the character of the first, the statute of limitations, or any other consideration.　The Connecticut rule, if given an extreme application, would shift upon the defendant the duty of *knowing the law*, at least to the extent of determining for himself whether an action will or will not prove " effective" if he does not defend the same.　He must either *decide this all-important question correctly*, or adopt the course of responding to and *defending* not only a first, a second, or a third suit brought against him, but as many more as an ignorant or malicious plaintiff may choose to successively bring and have pending at one and the same time.　It seems to follow incontrovertibly from what has been said that the only reasonable rule is, that save when — because of void process ; failure to comply with statutory conditions precedent to bringing suit ; instituting the action in a court having no jurisdiction of the subject-matter thereof ; failure to give the suit a standing in court, by omitting to perfect legal service ; or because of other like reasons, which the defendant is bound to know ren-

der it unnecessary to appear and plead,—the first suit is a wholly
abortive effort, which the defendant is not legally called upon to
resist at all, and therefore is really for the first time impleaded by
the filing of another action which does render imperative his mak-
ing a defense, the plea in abatement should be sustained. To allow
a plaintiff, uncertain as to where to sue, to bring an action in one
court and keep it pending there until he can, in another suit brought
in a different court, ascertain by judicial determination which of
the two suits was properly brought, would be to permit a practice
so obviously oppressive and unjust that we can not give the same
our sanction.

Some of the courts seem to think that a plaintiff who has be-
gun duplicate actions shows good faith by voluntarily abandoning
the first before calling upon the court to overrule a plea in abate-
ment to the second; but none of them, so far as we know, have
ever countenanced a plaintiff's insistence upon the alleged right to
keep " *both* irons in the fire," as is true of the plaintiff in the pres-
ent suit. There is undoubtedly an abundance of respectable au-
thority, the soundness of which we do not question, to the effect
that a plea in abatement based upon the pendency of a former suit
must show that the court in which it was brought had jurisdiction
to *entertain* the same. See, in this connection, 2 Estee's Pl. & Pr.
(4th ed.) § 3237, and cases cited in note; Carbolineum etc. Co. *v.*
Meyer (Miss. 1899), 25 So. 297; Newell *v.* Newton, 10 Pick. 470.

Our Civil Code, § 5094, already cited, declares that, to be " a good
cause of abatement," the former suit must be pending in the same or
some "other court that has jurisdiction." We may and do concede
that this means jurisdiction *to entertain the case;* but the jurisdiction
depends upon the plaintiff's allegations of fact, and not upon the truth
of those allegations. See Vanfleet, Collat. Attack, § 58, p. 71. From
that work, § 60, pp. 73, 74, we extract the following: " Jurisdic-
tion always depends upon the allegations, and never upon the facts.
When a party appears before a judicial tribunal and alleges that a
certain right is denied him, and the law has given the tribunal the
power to enforce that right — his adversary being notified,— it must
proceed to determine the truth or falsity of his allegations. The
truth of the allegations does not constitute the jurisdiction. The
tribunal must have jurisdiction before it can take any adverse step.
Its jurisdiction, necessarily, has to be determined from the allega-

tions, assuming them to be true." After using the above language, the author makes an extended quotation from the opinion of Lord Chief Justice Denman, in the case of Reg. *v.* Bolton, 1 Ad. & El. N. S. 66, 72 (41 E. C. L. 439, 442), in the course of which he says: "The question of jurisdiction does not depend upon the truth or falsehood of the charge, but upon its nature." See also §§ 587, 656. "It is the pleading on the part of the plaintiff that determines whether the court has jurisdiction or not, and not the defense." Works on Courts and their Jurisdiction, § 11, p. 31, and cases cited in note. See also the definition and test of jurisdiction in 1 Bailey on Jurisdiction, §§ 2 and 3. The test of jurisdiction is whether the plaintiff's pleadings show prima facie that the court appealed to can properly entertain the suit, and therefore are not open to demurrer. Schroeder *v.* Wittram, 66 Cal. 641, citing U. S. *v.* Arredondo, 6 Pet. 709; Grignon's Lessee *v.* Astor, 2 How. (U. S.) 338. In City of Terre Haute *v.* Beach, 96 Ind. 147, it was said: "The question of jurisdiction does not depend upon the sufficiency of the petition as the statement of a cause of action, but depends upon whether it does or does not state facts showing that the court in which it was filed has jurisdiction over the general subject, and that it may properly exercise that jurisdiction over the particular case made by the petition;" citing Morrow *v.* Weed, 4 Iowa, 77. Dequindre *v.* Williams, 31 Ind. 444, is a case which deals very fully with the subject of jurisdiction with respect to the question of residence. The validity of the appointment of a guardian for certain infants by an Indiana court was collaterally attacked on the ground that, as they were residents of Illinois, the court making the appointment was without jurisdiction to do so; and it was held that this collateral attack was not maintainable. With respect to this matter Chief Justice Frazer said (page 455) that it became the duty of the court making the appointment "to ascertain whether the case was one proper to call for the exercise of its power to appoint. For this purpose, it might hear proof as to residence, as well as concerning the circumstances of the infants. It should have determined these things before making the appointment." Further (p. 456) he pointedly asks, "Must such a question remain forever open?" and quotes from Arredondo's case cited supra, "The power to hear and determine a cause is jurisdiction," and from State of Rhode Island *v.* State of Massachusetts, 12 Pet. 718, "Any move-

ment by a court is necessarily the exercise of jurisdiction." He also observes: "Here the inquiry as to the residence of the infants was the exercise of jurisdiction. If that question was not correctly decided, it was an erroneous judgment, not a decision which the court had no power to make. The lack of power to determine should not be confounded with error in deciding a question of fact. And yet we are aware that there are numerous instances in which courts of high character, pressed by hard cases appealing strongly to their sense of justice, have overlooked this distinction, and some in which it has been virtually denied."

Again, it has been laid down that in no case "will a court inquire into the question of jurisdiction as to a case pending and undetermined in a court of general jurisdiction, legally competent to determine its own jurisdiction, and having acquired a prior de facto jurisdiction— a rule founded on comity and necessary to prevent injurious collisions." Wells on Jurisdiction, § 60, citing Ex parte Bushnell, 8 Ohio, 601. In point of fact, the court may not have jurisdiction of the person of the defendant; but he, if served, must respond and make this fact appear, or else he will be bound by the judgment which may be rendered against him. Until the question of jurisdiction is determined by the court having power to pass thereon, no other court should interfere. See Merriam *v.* Baker, 9 Minn. 40, which is directly in point upon our present question. It is true that Flandrau, J., did not concur in the judgment, but an examination of his dissenting opinion does not show that he differed from his colleagues on the proposition stated above. On the contrary, it would seem he thought that, upon the facts appearing, the alleged first suit was not really pending when the second one was begun. Referring once more to our Civil Code, § 5094, we think that an inevitable conclusion from the foregoing is, that the phrase, "if the first action is so defective that no recovery can possibly be had, the pendency of a former suit will not abate the action," manifestly means that the first action must be so defective *upon its face* that a legal recovery can not be had thereon. The defendant's plea in abatement made it distinctly appear that Mrs. Wilson's action in Cobb superior court upon its face showed that that court had jurisdiction, and that, unless defended, this action was bound to be productive. Neither of her petitions disclosed *as matter of law* that no such jurisdiction existed, and it was cer-

tainly not her right to introduce testimony in the city court of Atlanta and have therein tried the issue whether or not *as matter of fact* the superior court of Cobb county had jurisdiction of the person of the defendant. This being so, and it being a matter of proof and not of judicial cognizance where this company was domiciled for the purpose of being sued, the city court was right in ignoring the fact that the company had in the other court filed a plea to the jurisdiction, based on the ground that its principal office was in Fulton county and that it ought to have been sued in that county. His honor, Judge Reid, rightly left to the court in which it was filed the duty of passing upon the truth or falsity of this answer. Neither he nor this court could properly take cognizance of where the charter of the company, granted by the secretary of State, located the principal office of this company. That is a question of fact, the evidence upon which should be heard by the court in Cobb county; and it is also for that court, if it should appear that under the charter the company's principal office should be in Atlanta, but that as matter of fact the same is actually located in Marietta, to decide as matter of law whether the first suit was well brought in Cobb. All this will show clearly enough that the defendant has surely been called upon to do something in the way of defending against the original action. If it had ignored that action, it would not after a judgment against it therein have been heard to say the same was "ineffectual," nor would the plaintiff have been at all likely to so regard it. She does not manifest a willingness to even comply with the New York rule by dismissing her first suit, but is seeking to hold on to it, and at the same time press her suit in Fulton. She insists that the defendant should by its plea in abatement show that the first suit ought, in law, to fail, and at the same time she is doing all in her power to make it fruitful. In other words, she asks the defendant to assume a position the correctness of which she by her conduct stoutly controverts; or, at least, she invokes from the city court and from this court a decision upon this point before being willing to abandon her original action. She charges the company with inconsistency, and at the same time claims the privilege of being herself inconsistent.

After the most careful research and deliberation we are free from doubt that the action in the city court was properly dismissed.

*Judgment affirmed.    All the Justices concurring, except Little and Lewis, JJ., absent.*