MORRIS WOLF v. GREAT NORTHERN RAILWAY COMPANY.

June 3, 1898.

Nos. 11,080—(140).

**Injury to Employee—Assumption of Risk—Tearing Down Wall— "Gravel-Pit Cases" Distinguished.**

Where a servant engaged in tearing down a wall of stone and mortar by the undermining process (that is, by first removing the stone from the bottom of the wall) is injured, the doctrine of the assumption of risks, laid down in what are known as the "Gravel-Pit cases," does not apply. It cannot be held, as a matter of law, that such a servant as-sumes the risks and dangers incident to the employment.

### Abatement—Other Action Pending—Second Action Unauthorized.

Recovery in an action will not be defeated by the fact that another suit to recover on the same cause of action has been instituted, with the same plaintiff and the same defendant, when it is alleged in the reply, established by the evidence, and specially found by the jury that the suit last mentioned was commenced without plaintiff's authority. He is not obliged to dismiss the unauthorized action, as a preliminary to his right to recover in the one actually authorized and prosecuted by him.

Appeal by defendant from a judgment of the district court for Hennepin county, in favor of plaintiff for $1,515.16, after a trial before Jamison, J., and a jury. Affirmed.

*W. E. Dodge,* for appellant.

*F. D. Larrabee,* for respondent.

COLLINS, J.

While plaintiff was at work for defendant as a common laborer, engaged with others in tearing down and removing a stone wall from underneath a building, he received injuries, and instituted this action to recover damages therefor. The jury found in his favor, and defendant appeals from a judgment entered upon the verdict.

One of the principal points made by counsel for defendant is that the evidence was insufficient to support the verdict; and, properly to discuss this question, the facts on which the finding in plaintiff's favor was based must be quite fully stated.

Plaintiff was inexperienced at this particular kind of work, and during the first day was kept at shoveling. The wall or underpinning was about 60 feet long, at least 5 feet high, and 18 inches thick, built of common limestone laid in mortar. A few feet at one end had been torn down, and after excavating the earth on one side of the wall for a few feet laterally, so as to get at the foundation stones, plaintiff and another man were directed by the foreman to tear down a section of about four feet of the wall itself, commencing at the bottom layers of stone, and removing upward,—a common way of doing this kind of work, where the wall is not so high as to make the method very hazardous by reason of the danger attendant upon the falling of a large quantity of material from overhead. The plaintiff held a chisel against the mortar seams,

and the other man struck the head of this instrument with a hammer, thus loosening the layers of stone; and, with a little prying, the stones fell to the ground of their own weight. After one layer, at least, of stone had been removed in this manner, and while the men were endeavoring to take out another, that part of the wall immediately above the space created by the removal suddenly collapsed and fell to the ground, causing the injuries complained of. The estimated weight of the part which then fell was seven or eight hundred pounds. The testimony tended to show that, just prior to commencing the work of removing stone, plaintiff used his pick for the purpose of ascertaining the stability of the wall at that point, and was told by the foreman to go ahead,—that the frost (it was in early spring) would hold it, and that the wall was safe.

1. Upon this state of facts, defendant's counsel contends that when injured plaintiff was engaged in work not extrahazardous nor attended with unusual dangers, but was in such a common and ordinary occupation as every laborer engages in daily, and always subject to the rule of the assumption of the risks attending such employment, and further, that under the evidence plaintiff has been brought directly within the rules of law laid down in what are known as the "Gravel-Pit cases,"—notably, Pederson v. City of Rushford, 41 Minn. 289, 42 N. W. 1063. We cannot agree with counsel.

In the case just mentioned it was said that a master is not bound to provide safe employment for his servant, nor to do his work in a safe way, provided the servant, when he enters on the work, knows the risks and dangers incident to that kind of work and to that way of doing it; that no skill or science is required to inform one that the upper part of a bank of earth will come down when the lower part upon which it rests is removed; and that, when the servant knows the dangers, he takes upon himself the risks by accepting the employment, and when the dangers are not concealed, but are open to the senses, he is ordinarily bound to know them. Applying these rules, it was necessarily held that as the ordinarily intelligent man must know the effect and operation of the laws of gravitation,

and of undermining a bank of earth, he assumes all of the risks when so at work, and cannot recover where the earth falls upon him of its own weight. But it was not expected that these rules would be pertinent in all cases where the casualty is caused by the operation of the laws of gravitation.

It is obvious that the man of ordinary intelligence would know that, if a sufficient quantity of the lower part of a wall composed of stone and mortar was removed, the portion above would fall of its own weight, its support being taken away. But a wall of stone and mortar has lateral strength not found in a bank of earth, for its constituent parts are joined and connected laterally as well as in other directions. Remove a part of the foundation of a wall, and the balance above may be sustained in place, in some degree, through its adherence to the stone and mortar upon the sides; but not so with earth. This appeared from the evidence in this case, for several of the expert witnesses stated that usually the wall above hung after removing the lower stones, and had to be broken off by means of wedges inserted at the top. So that while every ordinarily intelligent man must be held to know that earth will fall, if undermined, he might not readily understand how far he could go with comparative safety when removing foundation stones or the lower layers of a stone wall of the height of the one now under consideration.

This case, on the facts, is not one where we can say that no skill or science were required in order to understand the risks incident to the employment, nor that the exposure to the dangers was open to the senses of the ordinary man. Nor can it be held, as a matter of law, that a servant engaged in this kind of work assumes the risk incident to the employment. On the facts this case is easily distinguishable from the Gravel-Pit cases, and the principles which control such facts have been repeatedly stated. See Bennett v. Syndicate Ins. Co., 39 Minn. 254, 39 N. W. 488, and cases cited.

2. The answer herein alleged that, prior to the commencement of this action, plaintiff had instituted another action in Ramsey county, to recover for the identical injuries, in which the issues were the same, which action, it was alleged in abatement, was still pending. The reply admitted that such an action had been brought

and was still pending, but averred that all of the proceedings therein were taken without plaintiff's authority and against his will. At the trial a written instrument executed by plaintiff, and delivered to the attorney at law who brought the first action, was produced in evidence, whereupon plaintiff introduced testimony tending to show that this writing was obtained by fraud practiced upon him. The jury found specially that the pending action set up in the answer was commenced without plaintiff's authority. And it is not urged that this special verdict was not supported by the evidence.

The claim made by defendant's counsel on this feature of the case is that, under the decisions (Page v. Mitchell, 37 Minn. 368, 34 N. W. 896, and Nichols v. State Bank, 45 Minn. 102, 47 N. W. 462), it was required of plaintiff that he cause the first suit to be dismissed, and set up such dismissal in his reply, or that it was essential, at least, that the first be actually dismissed when the one at bar was tried, and that the admitted pendency of the first at the time the second was tried absolutely prohibited a recovery in the second. The rule, as settled in this jurisdiction, is correctly stated by counsel, but it has no application to a case where the action pleaded in abatement has been instituted without authority.

The special verdict amounted to a finding that no action had been commenced by plaintiff, and as a consequence that none was pending. It was not plaintiff's action, but one brought in his name, and without his authority, and over which he was not bound to assume control. He had a right to repudiate it by declining to take any part in either its prosecution or its dismissal. He was not bound by the unauthorized commencement of an action in his behalf against defendant, and, if thereafter bound, it would be because he had adopted the act, and the fact created an estoppel. The parties were the same in both actions, and the issue made in respect to the lack of authority to bring the first could be more easily and fairly litigated on the actual trial of the second than it could be on a motion to dismiss, necessarily on affidavits, made in the first.

3. The written instrument or contract hereinbefore mentioned,

and referred to in the sixth assignment of error, is not before us, and therefore the assignment is passed without consideration.

4. Other assignments need no special mention.

Judgment affirmed.

CANTY, J.

I concur in the first part of the foregoing opinion, on the principles laid down in my concurring and dissenting opinions in the series of cases commencing with Blomquist v. Chicago, M. & St. P. Ry. Co., 60 Minn. 426, 62 N. W. 818. In the latter case, at page 433, I laid down the following proposition:

"When the inferior servant knows and appreciates the dangers to be avoided, and is as well, or nearly as well, able to care for himself as the foreman is to care for him, he is substantially on an equal footing with the foreman, and in a better position than the master to look out for his own safety. In such a case the foreman is not a vice principal, but he and the inferior servant are fellow servants. On the other hand, when the servant does not know or does not appreciate the danger to be avoided, and from his grade or position cannot be expected to know or appreciate such danger, while a competent foreman should be required so to do, it is not good public policy to hold that the master is not liable for the negligence of the foreman, resulting in injury to the servant."

This applies here. Whether such conditions existed as would constitute the foreman a vice principal was, on the evidence in this case, a question for the jury. While this wall may have been taken down in the usual way of taking down such walls, still it is not a kind of work that is common or frequent, common laborers would not ordinarily be familiar with its dangers, and it required some considerable degree of skill to determine whether the work here in question was being done in a reasonably safe manner. The Gravel-Pit cases are not parallel. It requires less skill to determine whether it is safe to work under a bank of earth or gravel, and, besides, common laborers usually do very much more of the latter kind of work, are ordinarily much more familiar with its dangers, and better able to take care of themselves when employed in such work. They are usually about as well able to look out for their own safety, when employed in such work, as the foreman is to look out for them. I concur, also, in the last part of the opinion.