ISAAC HILL v. F. G. WINSTON and Others.

June 23, 1898.

Nos. 11,015—(110).

**Master and Servant—Injury to Employee—Stripping Earth from Ore —Assumption of Risk—Question for Jury.**

Upon the facts of this case, it cannot be *held*, as a matter of law, under the doctrine of the "gravel pit cases," that plaintiff assumed the risk of the employment which caused the injury. On the contrary, this was a. question for the jury.

**Same—Vice Principal—Question for Jury.**

*Held*, also, that whether the foreman in charge of the gang of men in. which plaintiff worked, when injured, was a vice principal, within the · rules laid down by this court, was a question for the jury on the evidence.

**Juror Excused—Presumption—G. S. 1894, § 7181—Discretion of · Court.**

When the court has excused a juror from service who has been called on the impaneling of a jury for the trial of a civil action, no challenge · having been interposed, it must be presumed, in the absence of a contrary showing, that the court acted within the provisions of G. S. 1894,. § 7181, and also that it exercised a sound discretion in so excusing.

**Nonresident Witness—Admission of Declarations in Evidence— King v. McCarthy Followed—Evidence upon Former Trial.**

The rules laid down in King v. McCarthy, 54 Minn. 190, as to the admission in evidence of the declarations of a nonresident absent witness, who testified on a former·trial, followed and applied. And also the rules . laid down in Minneapolis Mill Co. v. Minneapolis & St. L. Ry. Co., 51 Minn. 304, as to the admissibility of the testimony of such a witness . given at the former trial, reiterated in King v. McCarthy, supra, followed and applied.

Action in the district court for St. Louis county to recover $20,000 · for personal injuries. The case was tried before Cant, J., and a jury, which rendered a verdict in favor of plaintiff for $5,000. .

From an order denying motions for judgment notwithstanding the verdict or for a new trial, defendants appealed. Affirmed.

*Draper, Davis & Hollister*, for appellants.

*John Jenswold, Jr.*, for respondent.

COLLINS, J.

Defendants were contractors, engaged in "stripping" an iron mine, that is, removing the earth from the surface of the ore; and plaintiff was in their employ as a common laborer. A cut more than 400 feet long had been opened, and, at the time plaintiff was injured, the removal of earth was being carried on at two levels, because the depth of the material made this necessary, the upper level being worked ahead of the lower some 40 feet. The earth to be so taken away consisted of ore, clay, gravel, sand and stones, and was so hard that it had to be blasted before it could be removed in any quantity; and for this purpose holes were made with drills on a line parallel with the bottom of the levels, carried several feet into the bank at right angles with its face and then filled with powder, which, on being exploded, enlarged the holes until a man could crawl in and load each with several hundred pounds of the explosive. Holes were also drilled from the top downward. It is evident that the material was a hardpan, which could only be removed by steady blasting, and that an almost perpendicular face of the bank, in some places 20 feet high, would stand as readily as stone.

A portable railway was used, the cars being stationed at convenient points near the bank, and the loose material was thrown directly into these cars by the shovelers, among whom was plaintiff. He was engaged in this work on the day of the accident, at a point where the bank sloped above him at an angle of about 45 degrees for some 20 feet. It looked solid, but in fact was more or less seamed with cracks visible from the top, the result of the blasting. At the bottom was a quantity of loose material, which plaintiff and another man were shoveling into a car, under the direction of the foreman of the gang in which plaintiff worked. It seems that a mass of earth four or five feet long, two feet wide, and about two feet thick, was actually loose in the bank above the men; and,

73 M.—6

without warning, it fell, striking the plaintiff, and inflicting the injuries complained of. At the trial, plaintiff had a verdict, and, on appeal from an order denying defendants' motion for a new trial, their counsel argue a number of assignments of error, some of which need no consideration.

1. Their first claim is that, because of the visible and apparent danger in working at the base of this bank, plaintiff assumed the risk, and for that reason the verdict should be set aside.

As might be anticipated, the "gravel pit cases" found in our reports are cited and relied on in support of this claim, as well as a number of cases from the courts of last resort in other states, in which the same doctrine of the assumption of risk has been announced and applied. But we do not consider the doctrine applicable in a case where the facts are so entirely different as they are here; for it was not open and apparent to a man of ordinary intelligence that a large body of the bank, at the foot of which plaintiff worked, was liable to fall. It would not give way when undermined in the ordinary way. It was composed of different elements, as before stated, and these had become cemented and bound together, so that the entire mass was nearly as hard as stone. It was common for the horizontal holes before mentioned to be enlarged and carried forward by blasting until they were from 10 to 15 feet long, and large enough for men to crawl into, carrying bags of powder. This shows the firm character of the material to be removed, and the manifest difference between it and sand or gravel. The risk, hazard and danger are perfectly plain to a servant who works in sand or gravel, for it falls or slides upon being disturbed; but not so with the hardpan in question, which could only be removed by drills or picks, or by the use of explosives, and the piece which dropped upon plaintiff fell because it had been loosened or dislodged by the blasting, and from no other cause.

It was incumbent upon defendants, when obliged to use such dangerous means to loosen or dislodge the material to be removed, to exercise a supervision, and to use the care required to prevent an exposure of their servants to unnecessary peril. The plaintiff's position was one of subordination and obedience. He was not expected to possess skill and knowledge as to the effect of the blasts,

nor was he entirely free to act upon his own suspicion of danger. He was directed by the foreman of his immediate gang of men to work at this particular place; and whether plaintiff knew, or in the exercise of reasonable care ought to have known and appreciated, the risks of his employment which caused the injury, was, under the evidence, a question for the jury.

2. The second point made by defendants' counsel is that Burgk, the foreman above mentioned, was not a vice principal, for the reason, apparently, that so to determine would be to hold that six or eight other men, each in charge of a gang of men then at work, were also representatives of the master.

In the gang in which plaintiff worked there were from 25 to 30 men, all of whom worked under the direction of Burgk. He had charge of the drilling, blasting and removal of the material for quite a distance in the cut. He directed the placing of the cars, and this of itself indicated where the men should use their shovels. He hired and discharged men, and was the only person who gave orders. Although Fogarty had general supervision over the work, it is clear that each foreman of a gang had charge of the men composing his own gang, and was clothed with the power of superintendence over them and over the work his particular gang was doing. Fogarty gave his orders to these foremen, never to the men.

In view of the character of the work, and the dangerous and powerful agencies used in carrying it on, it was at least a question for the jury whether the master did not owe to his servants the duty of supervision, in order to protect them against unnecessary dangers. If so, the foreman, Burgk, was the only man on the ground representing the master in that regard as respects the gang of men working under him. Under the rule so often stated in the decisions of this court by which to determine when as to others an employee becomes the representative of the common master, we do not hesitate in saying that the question now discussed was for the jury.

3. The charge of the court was very lengthy. The principles which govern in these personal injury cases have again and again been stated, here as well as in the courts below. It would seem that these principles should be well known; and yet counsel for

plaintiff prepared 20 written requests to charge, for the considera-
tion of the trial court, while counsel for defendants submitted 28.
Under these circumstances, the court did exceedingly well. We
have examined this large number of requests, the charge as given,
and the exceptions noted. The charge was very full, fair and com-
plete, and we find no error in it or in the refusals to charge com-
plained of by defendants' counsel.

4. During the impaneling of the jury, the name of one of the
regular panel was called; and he was then excused from further
service by the court, the defendants' counsel objecting, solely upon
the ground that, as the juror had been called, he could not be ex-
cused except "for cause or peremptorily." The defendants ex-
hausted their right to challenge peremptorily, and counsel now
contend that there was error in the ruling whereby the juror in
question was excused from attendance. The objection made was
based solely upon the grounds for a challenge stated in G. S. 1894,
§ 5370, and section 7190, subd. 6. Counsel overlooked section 7181,
which authorizes the court to excuse a juror from service upon
grounds therein stated, at least before he has been sworn. We
must presume here, in the absence of any contrary showing, that
the court acted within the provisions of this section, and also ex-
ercised a sound discretion when it excused the juror. And see
generally on this point, 12 Am. & Eng. Enc. 361.

5. The court below, over various objections made by defendants'
counsel, permitted the evidence of a witness (one Johnson) taken
upon a former trial of this cause to be read by the court stenog-
rapher from his notes, it being claimed that the witness had de-
parted from the state, and could not be found therein. The assign-
ments of error first involve the court's ruling on preliminary ques-
tions in reference to the residence of the absent witness.

The plaintiff testified that he was acquainted with Johnson, and
about one month before the trial met him in the city of Superior,
state of Wisconsin, and had a conversation with him in reference
to his place of residence. Against the objection of counsel, the
court allowed the witness to state what Johnson said as to his
residence being then in Wisconsin, it having already appeared that
at the time of the former trial Johnson resided in that state. The

competency of evidence on a preliminary question of this kind,—the evidence being offered to lay the foundation for the admission of the stenographer's notes,—which is to a certain extent addressed to the sound discretion of the court, is not governed by the same strict rules applicable to the admission of evidence upon the issues in the case. Anything which will reasonably tend to satisfy the court that the absent witness is not likely to return within the jurisdiction of the state may be admitted. King v. McCarthy, 54 Minn. 190, 55 N. W. 960. It was shown that Johnson's residence was in another state at the time of the first trial, and that he was not present at this trial. Evidence that his residence was in Wisconsin was very satisfactory proof that he intended to remain there and was not likely to come within the reach of the process of the trial court. Whether he intended to return to this state or remain in Wisconsin was a fact known only to himself; and on that question his own declarations were admissible, in connection with the fact before mentioned of his departure from Minnesota and absence therefrom when plaintiff met him, 30 days before the trial. King v. McCarthy, supra.

There was no error in this ruling, nor did the court rule incorrectly when it received in evidence, as preliminary to the admission of the former testimony, the return of the sheriff, by his deputy, made upon the subpœna issued April 29 for this same witness, the return bearing date May 12. The return that, after due and diligent search and inquiry for the witness Johnson throughout the county, he could not be found therein, made but two days before the day of actual trial, was competent as proof of the fact that his personal presence could not be obtained, in connection with the other proof of the same fact.

The basis upon which was founded the introduction of the testimony given by Johnson at the former trial was amply established; and on the authority of Minneapolis Mill Co. v. Minneapolis & St. L. Ry. Co., 51 Minn. 304, 53 N. W. 639, and King v. McCarthy, supra, evidence of this former testimony was admissible. We need not discuss other points made by counsel.

Order affirmed.

CANTY, J. (dissenting).

In my opinion, the evidence will not sustain a verdict for plaintiff.

I can see no substantial difference in principle between this case and the cases of Reiter v. Winona & St. P. R. Co., 72 Minn. 225, 75 N. W. 219, Swanson v. Great Northern Ry. Co., 68 Minn. 184, 70 N. W. 978, and cases cited. There was no substantial disparity between the foreman and the plaintiff in this case, and, in my opinion, the foreman was not a vice principal with respect to the particular danger out of which the injury arose. No blasting was done at the place where plaintiff was at work for at least four days before the injury; he knew all about the blasting and its effect on the bank; and he had ample time to familiarize himself with the condition in which the blasting left the bank. This work in which he was engaged was not of a temporary or unusual character, but had been carried on for nearly a year; so that the laborers employed in it would not ordinarily be ignorant of its dangers, as was the case in Wolf v. Great Northern Ry. Co., 72 Minn. 435, 75 N. W. 702. On the contrary, the work was of a permanent character, had long been prosecuted, and the employees were generally as familiar with its dangers as were the foremen. I noticed this distinction in the Blomquist case (see 60 Minn. 426, 441), in the Wolf case, and in several intermediate cases.

It is true that the material which plaintiff was engaged in excavating was somewhat different in character from the clay, sand and gravel which was being excavated in the Reiter case, the Swanson case and the other gravel-pit cases, above referred to, and the work in this case was perhaps more dangerous. But the mere fact that the work is dangerous is not the test of whether or not the foreman is a vice principal. Unless the foreman is or should be better able to take care of the inferior servant than the latter is to take care of himself, the foreman is not a vice principal, even though the work is dangerous. In the case of Swanson v. Great Northern Ry. Co., supra, the complaint alleges that the master had blasted and loosened the bank, of which the servant injured (a common laborer) had no knowledge, and the bank caved down by reason of this blasting. In Carlson v. Northwestern T. E. Co., 63 Minn. 428,

65 N. W. 914, there was a great crack in the soil on top of the bank, which the foreman knew and the inferior servant injured did not know, and the bank caved down by reason of the crack. In each of those cases there was sufficient disparity between the foreman and the servant injured to constitute the foreman a vice principal. But there is no such disparity in this case. Every time the plaintiff excavated a shovelful out of this bank, the conditions changed, and the place became more safe or more dangerous. For these reasons I see no difference between this case and the ordinary gravel pit cases.

Under the circumstances of this case, it could not be expected that the foreman would stand over each laborer, watch the change caused by each shovelful taken out, and warn the laborer from moment to moment of the extent of the danger. In this case, the Wolf case, the Reiter case, and the later Swanson case, the majority of this court seem to hold that the question of whether the plaintiff assumed the risk is the test of whether or not the defendant is liable. This is contrary to all other authority. It does not follow that, because the servant does not assume the risk, the master does assume it, whether he is negligent or not. It is often the case that neither of them assumes it. In other words, the doctrine of assumption of risks has no application except to cases where the master is negligent, and would be liable if the servant had not assumed the risk. In my opinion, plaintiff is not entitled to recover.