EDITH G. O'NEIL v. GREAT NORTHERN RAILWAY COMPANY.[1]

July 5, 1907.

Nos. 15,234—(136).

**Assumption of Risk.**

A person of ordinary intelligence and experience, who works at the foot of an incline from which workmen are employed in taking sand and gravel, and who observes and knows that the men on the bank are loosening the sand with poles in order to make it slide down, so that it can be loaded onto cars at the bottom of the incline, assumes the risk of being caught and injured by the sand thus released.

Action in the district court for Hennepin county by plaintiff, as administratrix of the estate of George C. O'Neil, deceased, to recover $5,000 for his death. The case was tried before John Day Smith, J., who at the conclusion of the testimony, granted a motion to direct the jury to render a verdict for defendant. From an order denying a motion for a new trial, plaintiff appealed. Affirmed.

*Albert E. Clarke,* for appellant.

*Rome G. Brown* and *Charles S. Albert,* for respondent.

ELLIOTT, J.

On April 16, 1906, plaintiff's intestate, George C. O'Neil, lost his life in a gravel pit where he was working for the Great Northern Railway Company. The bank of sand and earth slipped and slid down upon the deceased. In an action brought by the administratrix to recover damages, it was alleged that O'Neil's death was caused by the neglect of the defendant to take the proper and usual precautions to protect its employees against such an accident; by its negligence and carelessness in failing to adopt and use the usual and ordinary methods and de-

[1]Reported in 112 N. W. 625.

vices to prevent said bank of sand and earth from caving or sliding down upon its employees, who were working under defendant's direction and authority at the foot of said bank; in failing to furnish its employees with a reasonably safe place to work; and by placing an inexperienced man in charge of the work. It was also charged that negligent methods of carrying on the work were adopted. The trial court directed a verdict in favor of the defendant. The appeal is from an order denying a motion for a new trial.

At the time of his death O'Neil was between eighteen and nineteen years of age. He was strong, and had been working since he was fourteen years old. On February 26, 1906, he commenced to work for the railroad company in the Cedar Lake gravel pit, and worked there continuously with the crew about the steam shovel and in the sand bank until his death. He was an experienced workman, and was entirely competent to understand the dangers incident to such work. The embankment upon which the crew was working was from forty to one hundred feet in height, and was composed of fine gravel and sand. At the place where the accident happened the bank was about ninety feet high, and slanted gradually from the bottom to the top. There was no overhanging bank at the time of the accident. On April 16 the steam shovel outfit was at work in the pit. O'Neil was working as a jackman. The jackscrew at which he was working was used in connection with the moving of the shovel, as from time to time it became necessary in order to reach the place from which they were taking sand. The sand kept sliding down the bank, sometimes in large quantities, and all the workmen understood that they were working under dangerous conditions. Within a week before the accident there had been big slides, and within two weeks a slide almost as big as the one which buried O'Neil had occurred. Sand came down at times in sufficient quantities to cover the jackblock. One man had been seen to slide down with one of the slides. O'Neil and another man named Nelson were caught and buried beneath a large quantity of sand, which slid down the bank.

We can see nothing in the facts which distinguish this case from the so-called "gravel pit cases." The bank from which the sand and gravel was being taken sloped gradually from top to bottom. Men were stationed on the bank for the purpose of poling the sand and causing it

to slide down in more or less regular quantities. O'Neil was employed at the foot of the slide, and must have been aware of the dangers connected with the work. Nothing was concealed. The conditions were open, and the danger apparent to any one of ordinary intelligence, such as the evidence shows the deceased to have been. He saw the men at work loosening the sand and gravel in order that it might come down to where it could be reached by the shovel. He was bound to take notice of the ordinary familiar laws of nature, and to govern himself accordingly. No special knowledge or instruction was required. "He must be presumed to have had the knowledge which common observation forces on the most ordinary intellect, to have known the effect and operation of the law of gravitation * * * upon a perpendicular bank of earth. He must be presumed to have known that from such causes the earth will break away and fall down, and that the fall must be attended with danger to any one in its way." Olson v. McMullen, 34 Minn. 95, 24 N. W. 318.

It should be noticed that the slide which caught the deceased was not caused by an overhanging bank. It was started on the side of the slope by workmen who were there for that purpose. Under these circumstances, the trial court was justified in instructing the jury that the deceased assumed the risk as a matter of law.

The appellant's contention that a servant assumes only such obvious risks as are necessarily connected with the prosecution of the work in which he is engaged is correct, when properly applied. But the employee also assumes the extraordinary risks which are occasioned by the negligence of the employer when such risks are known and appreciated. Any other rule would destroy the whole doctrine of the assumption of risks, as it can only arise and become applicable after the negligence of the master has been established.

The order of the trial court is affirmed.