# NORRIS E. PETERSON, TRUSTEE FOR HEIRS OF EDWARD NORRIS PETERSON, v. MARK MODJESKI, d. b. a. WINONA PLUMBING AND HEATING COMPANY, AND ANOTHER.

117 N. W. (2d) 237.

August 17, 1962—No. 38,588.

*Jerre F. Logan* and *Tyrrell, Jardine, Logan & O'Brien,* for appellant.

*Robert W. Gislason* and *Cummins, Cummins & Gislason,* for respondent.

FRANK T. GALLAGHER, JUSTICE.

Appeal from a judgment of the district court.

Norris E. Peterson brought this action as trustee for the heirs of

Edward Norris Peterson, decedent, against Mark Modjeski, d. b. a. Winona Plumbing and Heating Company and Stanley Langowski.

For his first cause of action plaintiff alleged, among other things, that decedent expired on May 14, 1959, at the construction site of a new senior high school in the city of Faribault because of asphyxia resulting from his being buried alive in a trench that caved in on top of him; that his death was caused by the wrongful act or omission of the defendants; that he left his spouse, one child, and an expected but yet unborn child surviving him; and that as a result of his death they suffered a pecuniary loss.

For his second cause of action he alleged that decedent's death was directly and proximately caused by defendants' violation of Article XLVII of the Construction Safety Code together with the provisions of the safety standards, codes, and regulations adopted by the Industrial Commission of Minnesota, pursuant to and in compliance with the constitution and general statutes of the State of Minnesota.

For his third cause of action, plaintiff alleged that the death of decedent was caused by the wanton, reckless, and grossly negligent acts and omissions of defendants.

For his fourth cause of action, which was against the defendant Mark Modjeski only, plaintiff alleged that prior to May 14, 1959, defendant entered into written agreements with parties referred to in the complaint (not parties to this action) to do certain mechanical work as a part of the construction of the school at Faribault; that for a valuable and adequate consideration, the defendant agreed to adhere to and comply with, follow, and obey certain codes and standards for the protection of persons lawfully on the premises, for the prevention of accidents, the preservation of health, and for the protection of a class of persons of which plaintiff's decedent was a member as third-party beneficiaries to the aforesaid agreements; that defendant breached and violated the agreements as a result of which decedent was caused to lose his life.

Defendants in their answer admitted that the decedent expired at the time and place set forth in the complaint and denied each and every other allegation contained therein. They alleged as a first de-

fense, that any damage or injury suffered by decedent was caused or contributed to by his careless, negligent, and willful conduct; as a second defense, that any damage or injury suffered by decedent was caused by acts and deeds and under the direction of third parties over whom defendants had no control; as a third defense, that if there were any danger or risk of harm in the acts of defendants that they were open and apparent to the decedent and that he voluntarily and knowingly assumed the risk of harm and voluntarily exposed himself to it; and as a fourth defense, that at the time of the injury the employer of plaintiff's decedent and the defendant Mark Modjeski were each insured against liability under the Workmen's Compensation Act and were engaged in the due course of their respective businesses in the furtherance of a common enterprise and the accomplishment of the same and related purposes in the operation on the premises where the claimed injury was received; that the plaintiff herein has elected to receive and has received benefits under the Workmen's Compensation Act from decedent's employer, and that the action of plaintiff is governed by the provisions of Minn. St. 176.061, subds. 1, 2, and 3.

To attempt to set out in detail the somewhat conflicting statement of facts in the briefs of the opposing parties would unduly extend this opinion. Briefly, it appears from the record that the Faribault School District hired an architectural firm to design and supervise the construction of their new senior high school; that defendant Mark Modjeski, d. b. a. Winona Plumbing and Heating Company, was a subcontractor; and that the defendant Stanley Langowski was a machine operator employed by Modjeski. Modjeski was to do the outside plumbing work at the school. This work included excavation and the installation of storm and sanitary sewers, water and gas lines, and the refilling of trenches.

The work was commenced in May 1958 and completed in July or August of that year. The plans and specifications for the job required that Modjeski furnish compaction tests during the backfill operation which apparently he failed to do. During the fall of 1958, after the backfilling had been done, the architects on the job in-

sisted that compaction tests be furnished before final payment would be made to Modjeski. After considerable correspondence it appears the architects agreed that without reexcavating the whole trench certain tests could be furnished by Modjeski at various levels and at various places at 100-foot intervals along the trench. The architects and Modjeski arrived at a final agreement as to the soil tests in May 1959, some 9 months after the trenches had been backfilled.

During April 1959, according to the record, Modjeski contacted the Twin City Testing and Engineering Laboratory, Incorporated, to have the soil tests run. A purchase order by Modjeski was issued to Twin City Testing to perform the compaction test required by the architects. The decedent, a soil technician employed by the testing laboratory, stopped at the Faribault school site on April 30, 1959, to check with the architect on the tests to be made. On May 14, 1959, the date of the fatal accident, decedent again went to Faribault to make the tests.

Norman E. Henning, vice president and chief engineer for Twin City Testing, who indirectly supervised decedent's work, testified that decedent was able to read specifications as to soil compaction requirements; that he had spent a building season around various types of construction work but that he had not made many tests beneath the surface of the ground. He mentioned one other job at the university where decedent had made soil tests during construction in a "big wide trench." He said the Faribault job was the only one the testing company did "where you go back and dig fill out and do it," so most of the work was on big flat surfaces where you have "got a large level spot to work."

Richard McNamara, chief of the physical test laboratory of Twin City Testing and supervisor of decedent, testified that the latter was employed as a laboratory technician and that for some 2 years prior to May 1959 decedent had occasion to go out in the field and do soil testing and that he had visited construction sites of various kinds during that time. The witness recalled the telephone conversation with Modjeski on the day before the accident relative to the soil test to be made at Faribault, at which time they discussed the check-

ing of compaction to be done at the high school. It was his understanding that the sand density cone method of testing was to be used and that the work would commence about 9 a. m. on May 14. There was some discussion as to equipment to be used in the work and it was his recollection that Modjeski agreed to furnish a back-hoe but that Twin City Testing would make the test.

In any event, defendant Langowski (Modjeski's employee) and the decedent met at the Faribault school site about 9 a. m. on May 14, 1959. There is nothing in the record as to conversation between Langowski and decedent prior to the commencement of the digging, due to the dead man's statute invoked by plaintiff's attorney. It does appear, however, that the tests were started and Peterson took a position where the first pit was to be dug and gave hand signals to Langowski, who conformed to the hand signals in the digging of the first trench. The machine used was a Hopto digger. Langowski testified that decedent stood in front of the machine and pointed towards the ground and that the witness operated the Hopto machine by digging a trench the width of the bucket, which was about 30 inches. He said that when the trench was about 10 feet long it had a 5-foot shelf and the other portion was 8 feet in depth. He said that decedent then got into the first level of the trench, the witness then handed him his testing equipment and that was the first time he saw a soil test made. After working in both levels of the trench, witness said, decedent went over to the school building with the soil he had gathered and his equipment and Langowski backfilled the first trench.

He further testified that the next time he saw decedent was when the latter motioned to him, pointing to the ground. The second trench was dug similar to the first, and decedent entered it to again make a soil test. During the lunch hour Langowski filled the second trench, and after lunch decedent returned to the school site to dig the third trench. The witness said he placed the digging machine in position, that decedent made certain hand signals, and that the third trench similar to the others was dug. Langowski then turned to grease the bucket on his machine, and in a matter of seconds he looked around and saw that the trench had caved in. He attempted to dig with

his hands and a shovel and then called for help. Decedent was later found buried in the trench and dead.

Defendant Modjeski, hereinafter called defendant, refers to the testimony in the record to the effect that in the opinion of the architect's representatives, digging a ditch 10 feet long, 10 feet deep, and 30 inches wide was not proper by accepted standards; that the proper way to dig them would be to shore the trenches up with various materials or to vee out by sloping the sides and that the trenches in the instant case were not veed out or shored.

The case was tried before a jury which returned a verdict for the plaintiff against Modjeski, d. b. a. Winona Plumbing and Heating Company, and assessed damages in the sum of $25,000. Recovery against Langowski was denied. Thereafter, Modjeski moved the court for judgment in favor of defendant notwithstanding the verdict on the following grounds: (a) That the plaintiff failed to prove a cause of action based on negligence against the defendant; (b) that plaintiff's decedent was negligent as a matter of law, which negligence was the proximate cause of his death; (c) that decedent fully appreciated the risks and hazards confronting him and voluntarily assumed the risk thereof, which was the proximate cause of his death; and (d) that defendant was entitled to a directed verdict at the close of plaintiff's testimony and at the close of all the testimony, which motion was in all things denied. Judgment was entered for the plaintiff from which this appeal was taken.

Defendant assigns five errors on appeal which raise the following legal issues:

(1) Was there any evidence of actionable negligence on the part of the defendant other than the fact question of respondeat superior for the acts of his employee?

(2) Was there a fact question as to whether decedent assumed the risk and hazards which caused his death in voluntarily entering the pits dug in his presence and partly under his direction?

(3) Was there a fact question to be presented to the jury as to the contributory negligence of the decedent?

■ The defendant argues that the trial court should have directed a verdict in his favor as a matter of law because no actionable

negligence on his part was shown. He contends that inasmuch as the jury found no negligence on the part of his employee who actually dug the trenches there could be no negligence on his part under the doctrine of respondeat superior. It is his position that there was no showing in the record that he knew what type of pits were to be dug at the Faribault site or that any shoring material was needed. He submits that plaintiff failed to prove any negligence on his part other than through his employee and that judgment notwithstanding the verdict should be granted in his favor after a verdict in favor of his employee.

It is our opinion under the facts and circumstances here that there was evidence from which the jury could find actionable negligence on the part of Modjeski which was the proximate cause of the fatal accident, even if the jury did not consider whether Modjeski acted with due care in 1958 in backfilling the trenches. Based on Modjeski's own testimony it appears that he was a proprietor of a plumbing company, an excavating and plumbing contractor; his work included putting in sanitary sewers, storm sewers, gas lines, and water lines and he had been in the plumbing trade for 28 years. He had done work for municipalities and industrial builders and was generally familiar with plans and specifications of architects. As an excavating contractor he owned digging machines, bulldozers, and other machinery used in that business. He owned material that he had used for bracing or shoring holes or trenches; he owned 40 or 50 screw jacks that were used to brace the sides of trenches; he owned boards notched out—called plumbers' curbing—steel sheet piling to be used in sheathing trenches and mechanical equipment for driving sheeting into the ground.

He testified that the material he owned was adequate to shore up a trench and that one method of bracing a trench so that it would not cave in was to put steel sheets along the sides of the trench or put timbers called stringers lengthways in the trench and put screw jacks in between the stringers and tighten them up. He said that two screw jacks would be adequate to brace a 10-foot trench.

On May 13 he gave orders to his employee, Langowski, to go to Faribault with the Hopto digger, which machine he knew was to be

used for digging. Langowski, age 24 years at the time of the accident, had worked for him only 3 months. He had completed high school and taken a course in auto mechanics and diesel at Dunwoody Institute and had been employed by an implement dealer in Winona selling farm machinery and had worked in other lines but had only 3 months' experience in operating a Hopto back-hoe machine and in excavating work.

We could go into much further detail in connection with the testimony here to sustain the jury's finding against Modjeski. Suffice it to say that we have examined it and believe that there was evidence to sustain the jury's verdict.

Defendant cites Begin v. Liederbach Bus Co. Inc. 167 Minn. 84, 208 N. W. 546, in support of his position. We held there that (167 Minn. 87, 208 N. W. 548) "where the only possible fault is that of the employe, the 'necessary effect' of a verdict exonerating him 'is that neither defendant is liable.' " But that rule is clearly inapplicable here where we hold that there is evidence from which the jury could find the employer to be personally negligent.

■ It is our opinion that a fact question existed as to whether the plaintiff assumed the risks and hazards which caused his death in voluntarily entering the trench involved. We have examined and compared the cases cited by the defendant in support of his position as well as the record and the trial court's charge to the jury. We will not attempt to distinguish the cases cited by defendant from the instant case as each case must be determined in connection with its own fact situation.

Defendant included in his controlling cases Syverson v. Nelson, 245 Minn. 63, 70 N. W. (2d) 880. We do not consider that case controlling here. That case involved a farm employee who worked daily in a barn and was in daily contact with the watering system in the barn. A tank overflowed causing the barn floor to become wet and slippery. Both the plaintiff-employee and his employer in that case knew what would happen to the floor if the water system overflowed. That is not the situation here. To the contrary the decedent could not be said to be an experienced employee with respect to the particular work he was doing on the date of his death. He was trained

to do testing by the sand density cone method, a rather simple operation. There was no evidence that he had ever done this type of excavating or that he had any experience in shoring, bracing, or sheeting trenches, or that he had any previous experience with cave-ins in a deep, unprotected trench. Although we held in the Syverson case that the employee there assumed the risk, this court also said in that case (245 Minn. 67, 70 N. W. [2d] 883):

"The trend of the majority of the decisions in the country involving assumption of risk is ordinarily to leave determination of knowledge of dangerous conditions, appreciation of risk, and willingness to assume or acquiescence therein to the jury.

"This court has quite uniformly applied the rule that: 'Whether a servant assumed the risk is a question for the jury, unless the evidence is conclusive.'

\* \* \* \* \*

"We agree that the doctrine of the voluntary assumption of risk by a servant is one which ought to be very cautiously applied. Unless the evidence is conclusive, it is for the jury."

■ It is our opinion that a fact question also existed as to whether decedent was guilty of contributory negligence. See, 13B Dunnell, Dig. (3 ed.) § 7034. We have examined cases cited by defendant as well as the charge of the trial court in that connection. We find nothing in the cases cited nor in the charge of the trial court which would necessitate our reversing under the circumstances here.

Affirmed.

Otis, Justice (dissenting).

I dissent. In my opinion the rules enunciated in all of the Minnesota decisions dealing with accidents of this kind, beginning with Olson v. McMullen, 34 Minn. 94, 24 N. W. 318, and ending with Dobreff v. St. Paul Gaslight Co. 127 Minn. 286, 149 N. W. 465, compel a finding that decedent assumed the risk as a matter of law. While these early cases involved actions brought by employees against employers before the enactment of workmen's compensation laws, the principles which they developed apply with the same force to the instant claim against a third-party contractor.

In the Olson case the plaintiff was injured when he was struck by a chunk of earth which fell from a perpendicular bank below which he was walking. Although in that case the plaintiff was unable to speak or understand English, the court held (34 Minn. 95, 24 N. W. 318):

"* * * He [plaintiff] appears to be of mature years, and, though perhaps ignorant in some things, of ordinary capacity. He must be presumed to have had the knowledge which common observation forces on the most ordinary intellect, to have known the effect and operation of the law of gravitation and of thawing frost upon a perpendicular bank of earth. He must be presumed to have known that from such causes the earth will break away and fall down, and that the fall must be attended with danger to any one in its way."

Later cases emphasize that in order for the doctrine to apply, the danger must not be concealed but must be open and obvious,[1] and the plaintiff must have the same means of knowing the dangerous condition as defendant.[2] The employee is bound to comprehend the operation of familiar natural laws if he is a person of ordinary intelligence.[3] Whether special knowledge or instruction is required in the performance of particular work has been held relevant.[4]

In disposing of a claim which arose *before* the defense of assumption of risk was abolished in master-servant cases but was decided *after* the statute was adopted, we summarized the elements which govern the rule in Dobreff v. St. Paul Gaslight Co. 127 Minn. 286, 149 N. W. 465. Here again plaintiff was foreign born and had limited knowledge of English, but the court held that the hazards of excavating should have been understood by him in the absence of any concealed danger since the conditions were open and apparent to a person of his intelligence. In refusing to find assumption of risk as a matter of law we noted in Hill v. Winston, 73 Minn. 80, 75 N. W. 1030, that plaintiff's position was there one of subordination and obedience and

---

[1]Pederson v. City of Rushford, 41 Minn. 289, 42 N. W. 1063.

[2]Kletschka v. Minneapolis & St. L. R. Co. 80 Minn. 238, 83 N. W. 133.

[3]Swanson v. G. N. Ry. Co. 68 Minn. 184, 70 N. W. 978; Reiter v. Winona & St. P. R. Co. 72 Minn. 225, 75 N. W. 219.

[4]O'Neil v. G. N. Ry. Co. 101 Minn. 467, 112 N. W. 625.

we observed that he wasn't therefore entirely free to act independently after he suspected the danger. In that case plaintiff was directed by his foreman to work in a hazardous place, and we held that the question of assumption of risk was one for the jury.

While the doctrine is not favored by the courts and is usually a jury question, where the evidence is conclusive, the decision becomes a question of law for the court to determine.[5]

In the instant case it is first of all apparent that decedent was a person of maturity, experience, and intelligence. At the time of the accident he. was 25 years of age and had completed 2 years of college. Prior to his death he had been employed by the Twin City Testing & Engineering Laboratory, Incorporated, for 3 years, and during the last year he devoted his time regularly to the occupation of soil testing except during the winter months. Mr. Oliver Younger, a superintendent for the architects, testified that he felt decedent "would have gone a long way in the testing and engineering business." The laboratory chief of decedent's employer stated decedent was an able technician. The vice president of the company characterized him as an exceptional person who worked with precision and accuracy and rated him "highest" in comparison with others doing the same work. In contrast to the facts which governed in Hill v. Winston, *supra,* decedent was not in a position of subordination or obedience to anyone on the job and was at liberty to decide independently and without compulsion whether he would accept the hazardous conditions or refuse to assume the obvious risks. Nor was he given any assurances which would justify his failure to comprehend the dangers. On the contrary, it is apparent from the record that he actively directed and supervised the digging and locating of the trench which caused his death.

The only reason for Mr. Peterson's being on the site was to determine whether the architect's misgivings about the soil compaction were well founded. It is difficult to conceive of anything which would constitute a greater warning of potential trouble than just the an-

---

[5]Syverson v. Nelson, 245 Minn. 63, 71, 70 N. W. (2d) 880, 885; Geis v. Hodgman, 255 Minn. 1, 6, 95 N. W. (2d) 311, 315.

nounced purpose of decedent's assignment. One of the architects stated that because of defective backfilling it was necessary to withhold payment to the subcontractor.

"* * * We were worried that the compaction wasn't done properly * * *. We knew that the man hadn't done it right and we felt it wasn't compacted properly, that settlement would take place, naturally this worried us. He hadn't complied, we wanted him to do it right. We went out of our way, as a matter of fact, for this particular contractor to allow him to just make compaction tests because in fairness to a contractor we don't want him to do something that is unnecessary even though he had a breach of what he should have done."

The architect's superintendent stated he called attention to the fact the contractor's operator was filling the trench without compaction, and that he instructed the contractor to use a "sheepfoot" roller or vibrating compactor but that his advice was ignored. The same witness was permitted to testify that he informed decedent of the problems necessitating the tests which decedent was there to conduct. In the light of this testimony the evidence is conclusive that decedent was fully aware of the likelihood the soil would give way unless adequate safeguards were provided. Notwithstanding this knowledge, decedent voluntarily entered a trench which was 10 feet deep and 2½ feet wide, with the ground level at least 4 feet over his head. The defendant's negligent failure to take adequate precautions (on which his liability was based) was equally apparent to both parties. The trench was narrow and the walls perpendicular and without sloping, shoring, or bracing. It would be obvious to the most inexperienced layman that the excavation was a deathtrap. To aggravate the possibility of an imminent collapse there were piles of dirt 4 feet high within 2½ feet of the edge of the trench on the side which in fact did cave in and cause decedent's death.

To summarize, at the time of his death decedent was a mature, educated, intelligent person, experienced and trained as a professional soil tester, alerted to the possibility of the very condition which caused his death and acting without the urging, direction, or assurances of

anyone in authority supervising him. Not only were the dangers open and apparent but he himself was instrumental in creating them.

I respectfully submit that in hard cases such as this, the court should be vigilant against delegating to the jury its unpleasant judicial responsibilities, and avoid abdicating its constitutional prerogative of fixing the boundary line between questions of fact which the jury must decide and questions of law which the court must determine. I would reverse.