### CHADWICK *v.* BREWSHER.

*(Supreme Court, General Term, Third Department.  July 11, 1891.)*

MASTER AND SERVANT—DEFECTIVE APPLIANCES—KNOWLEDGE OF SERVANT.

> Plaintiff, a journeyman painter, was employed by defendant, a master painter,. to paint the exterior walls of a house.  A "painter's scaffold" was suspended by two ropes, each attached to the end of a heavy timber about 16 feet long, lying-flat on the roof, with the end projecting beyond the cornice eight inches.  The timbers were not fastened to the roof except by their weight and the declining position on the roof, which sloped downward from the cornice.  One of the tim-bers came off the roof, causing the scaffold to fall, whereby plaintiff was injured. When the scaffold was first hung, it was from a portion of the roof that sloped less; and when plaintiff, who was assisting defendant in hanging it, tied the tim-bers to a chimney, defendant said it was not necessary.  *Held,* in an action for damages resulting from the fall of the scaffold, that, though plaintiff knew the manner in which the scaffold was hung, he had a right to rely upon the opinion of his master, and a verdict in his favor would not be set aside on the ground that he was chargeable with contributory negligence.  *Marsh* v. *Chickering,* 101 N. Y. 395, 5 N. E. Rep. 56; *Sweeney* v. *Envelope Co.,* 101 N. Y. 520, 5 N. E. Rep. 358, dis-tinguished.

Appeal from circuit court, Albany county.

Action by James H. Chadwick against William Brewsher.  The plaintiff was a journeyman house painter in the employ of the defendant, who was a master house painter.  Plaintiff brought this action to recover damages be-cause of injuries sustained by him in consequence of the fall of a scaffold upon which he stood while engaged in the defendant's service.  The defend-ant, with his workmen, of whom plaintiff was one, on the 1st day of July, 1889, was painting the exterior walls of a brick building in the city of Al-bany, 65 feet front, 165 feet deep, and 24 feet high, having a valley roof, de-scending from the outer edges of the cornice at the top of the exterior walls towards the center.  The plaintiff and another workman were supported by a "painter's scaffold," suspended by two ropes, each attached to the end of a separate plank lying flat upon the roof, with the end projecting beyond the cornice 8 inches.  Each plank was about 16 feet long, 2 inches thick, and 14 inches wide.  The plank was not fastened to the roof except by its weight and its declining position down the slope of the valley roof.  One of these planks came off the roof, causing the scaffold upon which the plaintiff rested to fall, and plaintiff was injured.  The scaffold was such as is commonly used by painters.  When the roof is flat, or, if a valley roof, the decline towards the middle is slight, it is customary to fasten the planks either by putting weights upon their inner extremity or by tying them.  The plaintiff had been engaged upon this building six days.  The defendant was also personally en-gaged in the work.  He had worked from this scaffold.  When the scaffold was first hung it was on the south side of the building.  Both plaintiff and defendant then hung it, and plaintiff tied the planks to a chimney or brick ventilator, the defendant remarking that it was not necessary.  The roof de-

clined less upon this side of the building than upon the side where the scaffold fell. The defendant subsequently shifted the scaffold several times, and did not tie the planks, or otherwise fasten them. The plaintiff was upon the roof several times when the platform was shifted, and he testified that all the while he was working upon it he knew it was not tied. The plaintiff had been a painter about 50 years; the defendant, about 38 years. From a judgment for plaintiff, defendant appeals.

Argued before LEARNED, P. J., and LANDON and MAYHAM, JJ.

*Wm. P. Rudd*, for appellant. *D. C. Herrick*, for respondent.

LANDON, J. The evidence shows that the defendant, the master, adjusted the planks from which the scaffold was hung, and did not fasten them to the roof, and that in consequence one of the planks came off the roof, causing one end of the scaffold to fall, with injury to the plaintiff as the result. The verdict is to the effect that the plaintiff was injured in consequence of the negligence of his master. This verdict must stand, unless the plaintiff is chargeable with contributory negligence. The plaintiff knew how his master had left the planks which supported the scaffold, and made no complaint or comment. But, when the scaffold was adjusted several days before, the plaintiff, in the presence of the defendant, tied the planks. The defendant then said it was unnecessary to tie them; that they would hold, without tying, all that could be placed upon the scaffold. They were not thereafter tied. We think the verdict may be upheld upon the ground that, though the plaintiff had full knowledge of the facts, he did not know, as fully as his master was chargeable with knowing, the danger indicated, that he was put off his guard by his master's assurance of safety, and that he relied, and had the right to rely, in view of his lack of any knowledge of danger, upon what he supposed to be the better opinion of his master. The law assumes that the master knows, or ought to know, more than the servant about the risks peculiar to the place where he assigns him to labor, and to the appliances used in performing it, and, in any event, owes him the duty to use reasonable care to guard him against danger from either. The fact may be shown in exculpation of the master that the servant had the superior knowledge, and was therefore employed, or that he had ample knowledge of the risks, and, without any urging on the part of the master, voluntarily assumed them, knowing that the master, from motives of economy, or in reliance upon the extra care and ample knowledge of the servant, declined to use any further safeguards, or postponed their introduction. *Marsh* v. *Chickering*, 101 N. Y. 396, 5 N. E. Rep. 56, and *Sweeney* v. *Envelope Co.*, 101 N. Y. 520, 5 N. E. Rep. 358, cited by the defendant, illustrate these rules. In the first case the servant was employed to light lamps in front of his employer's building. He used a ladder to mount up to the lamps. He had asked his employer for a ladder hooked and spiked. He was told to get such a ladder. He got a new ladder, and his employer promised to have hooks and spikes put on it, but did not do it, and the servant used it as it was, until it slipped on the snow, and injured him. The court assert the rule of the better knowledge of the master, but hold that in the case stated the servant's knowledge was, with respect to the ladder and its safety, equal to that of the master, as it obviously was. Suppose that when the servant asked to have hooks and spikes placed upon the ladder, the master had answered, "It does not need them; it is safe as it is." The case would have been different, and more nearly like the one before us. *Sweeney* v. *Envelope Co.*, 101 N. Y. 520, 5 N. E. Rep. 358, was a case in which the servant knew as much about the risks of the machine as his master did, but nevertheless assumed them without being urged, and without being put off his guard. He was not allowed to recover. Suppose the master, when the servant pointed out the danger, had said there was none, and thus put the servant at ease respecting it. The result would have

been different. Here we may assume that the plaintiff knew as much about how the planks were placed as his master did, but that he did not know as well as his master did the danger which was latent in such an adjustment of them. It is one thing to know the visible conditions, and may be quite another to know what they indicate. In the present case the master assumed to know, and by virtue of his assumed superiority of knowledge he dispelled his servant's apprehensions. *McGovern* v. *Railroad Co.*, 123 N. Y. 280, 25 N. E. Rep. 373, is a recent application of the rule. There the servant, from his long employment, must have known, if his intelligence was normal, fully as much about the danger as his master did. But the court held that he had the right to assume that his master, in directing him to enter the bin which proved to be a death trap, knew more about it than he did. His master in that case did not, as in this, tell him it was safe, but the court held he had the right to infer that his master thought it safe because he gave the order. In the present case the jury had the right to find that, if the master had not interposed his assumed superior knowledge, the plaintiff would not have taken the risk. The judgment should be affirmed, with costs.

All concur.