ALLEN v. GILMAN, McNEIL & CO.

LEE v. SAME.

(Circuit Court, E. D. Pennsylvania. January 26, 1904.)

Nos. 65, 89.

1. MASTER AND SERVANT—ASSUMPTION OF RISK—WORK DONE UNDER SPECIAL ORDERS OF MASTER.

Workmen who, by direction of the master's superintendent, undertook to remove the tamping from blasting holes containing charges of dynamite which had failed to explode, in reliance on the positive assurance of the superintendent that there was no danger after the failure of the electric battery to explode the charge, although they knew there was some danger, cannot be charged by the master with having assumed the risk therefrom; and they are entitled to recover for injuries received by reason of the explosion of the blast, where it is found that they performed the work with proper care.

Actions at Law for Personal Injuries. On motions by defendants for new trial, and for judgment on reserved point notwithstanding the verdict.

Francis Fisher Kane, for plaintiffs.

R. W. Archbald, Jr., and Simpson & Brown, for defendants.

J. B. McPHERSON, District Judge. These two cases were tried together, and the jury found a verdict for each plaintiff. The only question now to be considered is whether the evidence required me to instruct the jury in favor of the defendants. If it was necessary to submit the question involved, the manner of submission is not complained of. The disputed questions of fact were, the instructions that the plaintiffs had received concerning the hazardous character of the work, the obviousness of the danger, and the assurances of the defendants' superintendent that there was no real danger to be feared. Upon the one hand, the plaintiffs contend that, although they were undoubtedly aware of the dangerous character of the work that they were set to do—using a long iron scoop to draw the tamping from blasting holes containing a charge of dynamite that had failed to explode—nevertheless they were justified in relying upon the positive assurances of the defendants' superintendent that there was no danger after the electric battery had been "pulled" on the holes, and had failed to set the charges off. On the other hand, the defendants' position is that the danger was open and obvious to any man of ordinary intelligence; that the plaintiffs knew that the danger existed, because they have so testified; and that to go on with the work under such circumstances was a deliberate acceptance of the risk, or contributory negligence, which bars them from a verdict. Conflicting authorities have been cited, and it would not be difficult to support a decision for the defendants by sufficiently numerous cases; but I have come to the conclusion that the rule expressed in Shearman & Redfield on Negligence (5th Ed.) vol. 1, § 186, is the proper guide in a situation such as was

¶ 1. Assumption of risks incident to employment, see note to Chesapeake & O. R. Co. v. Hennessy, 38 C. C. A. 314.

presented by the evidence here, and that the application of this rule to the testimony produced at the trial requires me to permit these verdicts to stand. The section is as follows:

"Sec. 186. Risks Assumed under Special Orders. Where a servant, seeing a defect and notifying his master thereof, is nevertheless ordered to continue his work, without any express or implied promise of a remedy, it has sometimes been held that he cannot recover, on the theory that from that time he assumes the risk. But this is unsound. A master's order is at least as much justification for the servant's continuance as would be another's invitation, and we have seen (section 91) that a mere invitation is in some cases enough to acquit the person acting upon it from the imputation of contributory negligence. The true rule in this as in all other cases is that, if the master gives the servant to understand that he does not consider the risk one which a prudent person should refuse to undertake, the servant has a right to rely upon his master's judgment, unless his own is so clearly opposed thereto that in fact he does not rely upon the master's opinion. So, if the peculiar risk of the act commanded by the master is not obvious, the servant has a right to assume that he is not sent into any unusual peril, and he is not bound to investigate into the risk before obeying his orders. A servant is not called upon to set up his own unaided judgment against that of his superiors, and he may rely upon their advice, and still more upon their orders, notwithstanding many misgivings of his own. If the master directs the servant to do some act which is dangerous, but which could be made less dangerous by the use of special care on the part of the master, the servant has a right to assume that such special care will be taken, and does not take the greater risk upon himself. If the master calls suddenly upon the servant, under circumstances which give no time for consideration, or if he asks the servant to extricate him from danger, he is bound to indemnify the servant for injuries sustained through obedience to such a call. The servant's dependent and inferior position is to be taken into consideration, and, if the master gives him positive orders to go on with the work, under perilous circumstances, the servant may recover for an injury thus incurred, if the work was not obviously so dangerous that no man of ordinary prudence would have obeyed. More especially is this the case where the master insists upon the servant proceeding with the work, either with a promise of inspection or repair, or with an assurance that there is no danger. This, we are glad to say, is now settled law. In short, the law of estoppel applies to such cases. The master is estopped from alleging the falsity of his own representations, unless it clearly appears that the servant did not rely upon them. Yet there are extreme cases in which 'the danger was so glaring that no prudent man would have entered into it, even under orders.' In such cases, servants cannot generally recover for risks thus assumed. Yet if it is the duty of a servant to obey such an order, even in the face of a known danger, as it would be in the case of a seaman, he is entitled to indemnity against the risk. And a risk must be voluntarily assumed, to relieve the master from liability. Risks incurred under coercion are not assumed."

And section 211 is also pertinent to the subject:

"Special Risks Incurred under Coercion. As already stated, it is now held by the most conservative authorities that a servant is not deprived of his right to recover for defects caused by his master's negligence, arising or first coming to the servant's notice after he has entered into service, unless he assumes the risk of his own free, unconstrained will. If, therefore, he continues to incur the risk of such defects under any kind of necessity or coercion, such as the threat or reasonable fear of dismissal, he does not voluntarily assume the risk, and is not necessarily debarred from recovery thereby. It is true that many decisions can be found to the contrary, but, now that the ultra-conservative courts of Great Britain and Massachusetts have overruled them, we may be permitted to concur with the Virginia court in condemning such decisions as founded on 'cruel and inhuman doctrine.'"

Several recent cases have been decided in Pennsylvania in conformity with these views: Wagner v. Chemical Co., 147 Pa. 475, 23 Atl.

772, 30 Am. St. Rep. 745; Reese v. Clark, 198 Pa: 312, 47 Atl. 994; McCray v. Varnish Co., 7 Pa. Super. Ct. 613; Levy v. Rosenblatt, 21 Pa. Super. Ct. 543.

The jury having found that the plaintiffs did not fail in the duty of exercising proper care under the circumstances, and there being fairly conflicting testimony upon this point, the finding should stand. In each case a new trial is refused, and judgment is directed upon the verdict. To the refusal of the defendants' motion for judgment notwithstanding the verdict, and to the entry of judgment in favor of the plaintiff, an exception is granted in each case.