THE CONSOLIDATED COAL COMPANY OF ST. LOUIS

*v.*

ROBERT SHEPHERD.

*Opinion filed February 21, 1906.*

MINES—*when coal miner does not assume risk of injury.* A coal miner who follows the system of mining adopted by the mine manager, and who, when in doubt as to whether he is thus leaving a wall or rib of proper thickness, requests the mine manager to make an investigation and relies upon the latter's assurance that he is pursuing the right course and obeys his instructions to continue work, does not assume the risk of injury due to the condition of the wall or rib unless the danger therefrom was so obvious that an ordinarily prudent man would not have continued to work.

APPEAL from the Appellate Court for the Fourth District;—heard in that court on appeal from the Circuit Court of St. Clair county; the Hon. R. D. W. HOLDER, Judge, presiding.

LOUDEN & CROW, for appellant.

WEBB & WEBB, for appellee.

Mr. JUSTICE BOGGS delivered the opinion of the court:

The appellee is a coal miner, and on the 17th day of August, 1902, was employed in mining coal in room No. 11, on the north side of the fourth west entry of the appellant's coal mine at Breese, Illinois. Room No. 10 in the same entry is situate immediately east of room No. 11, in which appellee was working, and room No. 12 is situate immediately west of room No. 11. The walls dividing these rooms, called by the miners the "ribs" of the room, were of coal, and the plan for the development of the mine required the walls or ribs should be left of the thickness of thirty-five feet. This thickness was to be maintained not only as a means of supporting the roof of the mine, but also for the reason that a wall of

less thickness would expose the miners in the rooms to danger from "shots" fired by miners in adjoining rooms for the purpose of dislodging the coal. On said 17th day of August, Marion Wishinskey was working in room No. 12, and he fired a shot in the rib of his room on the east side thereof, being the rib which divided room No. 12 from room No. 11, in which the appellee was then mining coal. The explosion blew a hole through the rib or wall of coal constituting the wall between rooms Nos. 12 and 11 and blew fragments of the coal with great force into room No. 11, and the appellee was struck and injured thereby. It was found that the wall between rooms Nos. 12 and 11 at this point was of the thickness of not more than eight feet. It appeared from the testimony that the appellee had so mined the coal in his room (No. 11) that the westerly wall of his room gradually bore to the north-west, and thus it was the wall between rooms Nos. 11 and 12 became so thin and dangerous. The rooms were laid off by the mine manager, and it was intended that they should be driven directly north from the entry and of a fixed width, which, according to the plan on which the rooms were laid off, would leave the ribs or walls thirty-five feet in thickness between the rooms. Appellee, however, contended that it was the fault of the mine manager that he deflected the west wall of his room to the left and mined away coal that should have been left to stand as the wall of the required thickness between his room and that of Wishinskey. The evidence tended to show that the mine manager laid off the rooms, and, as the work of mining the coal progressed, directed the location in the several rooms of the track on which the cars containing the coal that had been mined were hauled out of the rooms. Under the plan or system which the evidence tended to show had been devised and put in force in the working of this mine these tracks were relied upon to enable the miners to so mine the coal in each room that the ribs or walls of the room would be projected in straight lines. This was to be accomplished

by the mine manager locating the tracks in the center of the room and the miner being required to mine the coal to an equal prescribed distance on each side of the tracks, which being done the miners would not encroach on the mass of coal which it was essential to the safety of the miners should remain in place between the rooms. The testimony tended to show that after appellee had worked in this mine about four months it was discovered by the mine manager that the wall between rooms Nos. 10 and 11 was not of the thickness necessary to conserve the safety of the miners. This was occasioned by the miners in room No. 10 who mined away the coal that should have been allowed to remain and constitute a wall of the required thickness and safety between rooms Nos. 10 and 11. The mine manager concluded that he would lay the track of the road in room No. 11 "a little," as he said, "to the left,"—that is, to the west,—in order that the appellee, in mining coal, following the rule that the face of the wall or rib of the room should be kept at equal distance from the rail of the track, would bear towards the west, thus leaving a wall or rib of greater thickness between rooms Nos. 10 and 11. The manager testified he "intended to hold the road a little to the left until we got a little piece in and the pillar (or wall between rooms Nos. 10 and 11) was thicker and then to go back to the line again." But the evidence tended to show that the mine manager did not again re-locate the road or deflect the line thereof so that the coal would be mined "back to the line again," but the track of the road was extended, as the coal was mined, by the same line of divergence to the west, and the appellee, following the rules of the mine, so mined the coal as to keep the walls of his room an equal distance from the track. The result was the mining away of the coal which should have been allowed to remain as the west wall of room No. 11 dividing that room from room No. 12 until there remained but about six or eight feet of coal between those rooms. The shot fired by Wishinskey blew down this thin and weak

wall and blew blocks of coal into room No. 11, and thus the appellee was injured. The evidence therefore tended to show that the failure of the mine manager to properly direct the location or re-location of the track of the road in room No. 11 was the proximate cause of the injury. This was charged as negligence in the declaration.

There was testimony tending to show that the appellee, after he had mined the coal in his room along the deflected line of the track for about eighteen months, became uncertain and in doubt whether the walls of his room were being driven in the right direction, and requested the mine manager to make the necessary examination and ascertain whether the mining of his room was proceeding in the right course or direction, and that the mine manager reported to the appellee that he had inspected room No. 12 and made the necessary examination, and found that the coal was being mined in the proper direction by the appellee in room No. 11, and directed the appellee to continue mining coal accordingly. Within two or three days thereafter the appellee received his injury. This action and direction of the mine manager was alleged in the declaration as negligence and as a ground of recovery, and the evidence tended to establish it. The trial court did not err in refusing to direct a peremptory verdict in favor of the appellant.

We do not think the judgment should be reversed because of the modification of instruction No. 11 asked by the appellant company and given as modified. The instruction as asked would have advised the jury that if the plan and system of controlling and directing the mining of the coal by employing the track of the road in the rooms as a point from which to regulate the digging away of the coal on either side of the track was dangerous, and the plaintiff, by reason of his experience as a coal miner, did know or ought to have known that it was a dangerous system or plan, he, as a matter of law, would be held to have assumed the risk of such danger. The court so modified the instruction

as, in effect, to say to the jury that the risk would not be assumed if the appellee acted and relied on the assurance of the mine manager that he had examined room No. 12 and that it was safe to continue to so mine the coal in room No. 11 as to leave the tracks in the center of the room, and also on the direction of the manager to proceed with the work. The appellant was operating the mine on the plan or system referred to, and the appellee was justified in conforming to the system or methods in use in the mine unless the danger of doing so was so apparent and great that a man of ordinary prudence would not incur it. Even if the plan or system was so imperfect as that it would not be prudent to rely upon it in its general working, still if the appellee, being uncertain as to the safety of the system or plan in general, had called the attention of the mine manager to the conditions of safety or danger at the particular time and place, and was assured by the mine manager that he had made the necessary investigation and that there was no danger in observing the system, and was directed by the mine manager to continue to perform the work as a miner in accordance with the plan or system, then he would not be held to assume the risk or danger of so continuing in the performance of the work unless the danger was so plain and imminent that no one but a reckless person would have continued at the work. The instruction, as drawn, ignored the contention of the appellee, which was supported by the tendencies of the proof, that he called the attention of the mine manager to the work and asked him to make the requisite investigation and ascertain whether the plan or system of doing the work was exposing him, the appellee, to danger, and that the manager assured the appellee he had made such investigation and that there was no danger, and directed him to continue the work as before. The modification introduced this ignored proof as a proper element for the consideration of the jury, and properly advised them as to its effect if they found it established by the proof.

Instruction No. 15, as asked by the appellant and refused, purported to declare the rule of assumed risk, but omitted, as did instruction No. 11 as asked, all reference to the assurance of safety and direction to proceed given by the representative of the appellant company. The instruction was properly refused.

We think the record is free from error. The judgment must be affirmed.

*Judgment affirmed.*