Fourth District—October, 1912.    395

Grannon v. Donk Bros. Coal Co., 173 Ill. App. 395.

## Patrick Grannon, Appellee, v. Donk Bros. Coal & Coke Company, Appellant.

1. PLEADING—*when one good count sufficient.* One good count to which the evidence is applicable and which if proven is sufficient to support the judgment is all that is requisite.

2. MINES AND MINERS—*declaration.* A count which alleges that it was plaintiff's duty to assist in cleaning up falls in a mine, that the assistant mine manager took him to a fall and inspected the roof and ascertained, or could have ascertained with ordinary care, that loose material remained in the roof and was likely to come down, but directed the plaintiff to proceed to clean up the fall, and that relying on assurances of safety, he with due care proceeded and was injured by a fall, is, if proved, sufficient to sustain a judgment.

3. MINES AND MINERS—*evidence.* Evidence that an assistant mine manager made an examination of the roof and found it to be drummy and composed of soapstone, which was more likely to fall than other material, but directed the plaintiffs and others to go ahead and clean up a fall, is sufficient to warrant a finding of negligence.

4. MINES AND MINERS—*questions for jury.* Where plaintiff was injured by a fall in a mine, his negligence is a question for the jury, where it was his duty to clean up falls and a few minutes after beginning work the assistant mine manager had examined the roof, where timbers were broken, and directed him to go ahead.

5. MASTER AND SERVANT—*contributory negligence and assumed risk.* It would seem that where a servant relies on assurance of the master that conditions are safe, and continues to work, he is not guilty or contributory negligence nor does he assume the risk.

6. MINES AND MINERS—*instructions.* In an action for injuries caused by a fall in the roof of a mine, it is not reversible error for the court to modify an improper instruction tendered by the defendant, by inserting "and did not rely on assurances of safety" by the mine manager, for such modification even if it assumes such assurances, could not mislead where the declaration alleged specific assurances, and other instructions stated that the specific acts of negligence charged must be proved.

7. INSTRUCTIONS—*when one cannot complain of improper modification.* One who tenders an improper instruction cannot complain of a modification thereof by the court though it is not made good.

8. MINES AND MINERS—*instructions.* In an action for injuries from the fall of the roof of a mine, it is not error to refuse an instruction which undertakes to point out particular things that the

396    APPELLATE COURTS OF ILLINOIS.

Grannon v. Donk Bros. Coal Co., 173 Ill. App. 395.

plaintiff should do or fail to do, to entitle him to recover, or things he should do in the exercise of care, since such instruction invades the province of the jury.

9. DAMAGES—*when not excessive.* A verdict for $15,000 is not excessive where the plaintiff's spine was injured, a vertebra dislocated, he was paralyzed from the hips down, had no control over his bowels or urine, and was unable to sit up and care for himself or to perform any labor.

10. MINES AND MINERS—*evidence.* Failure to establish a wilful violation of statute as alleged is immaterial when a good common law count in the declaration is sustained by the evidence.

Appeal from the Circuit Court of St. Clair county; the Hon. GEORGE A. CROW, Judge, presiding. Heard in this court at the March term, 1912. Affirmed. Opinion filed October 7, 1912. Rehearing denied November 9, 1912.

WISE, KEEFE & WHEELER and WHITNEL, BROWNING & GILLESPIE, for appellant; R. B. HENDRICKS and MASTIN & SHERLOCK, of counsel.

WEBB & WEBB and BARTEL, FRAMER & KLINGEL, for appellee.

MR. JUSTICE McBRIDE delivered the opinion of the court.

The trial of this case in the Circuit Court resulted in a verdict and judgment for the plaintiff to the amount of fifteen thousand dollars, and the defendant prosecutes this appeal.

The appellant was engaged in the business of operating a coal mine at Troy, in Madison county, Illinois, and the appellee had worked there for about seven or eight years and during that time had been engaged in practically every employment about the mine. For more than one month before appellee was injured he was employed as a slate shifter and timberman, and his duties were to clean up falls and remove fallen slate and rock from entries, and timber such places as required it. Some time during the night of July 16, 1911, or early morning of the 17th, a fall took

place in what was called the run-around, connected with the eleventh west entry which was used as a parting for loaded cars. The run-around was from six to eight feet wide, and about five feet high and the fall of the roof was sufficient to fill the entire space from rib to rib, and extended almost, if not entirely, to the roof. The mine examiner in going his rounds in the examination of the mine came to this fall about three o'clock in the morning, and says at that time the rock and slate filled the space up to the roof so that he could not reach the roof to sound it; he approached the fall from the east side and there says that he marked with chalk, on the rib, the date of his visit and also placed a danger mark there, and immediately notified the night boss of the fall. The night boss sent a gang of men at once to clean up the fall. The fall had been caused by the timbers that supported the roof giving away, and on each side of the fall the timbers still supported the roof. In the morning at the usual time of commencing work appellee went down into the mine, and he, with seven other men, were directed by the assistant mine manager to relieve the night shift, and to clean up this fall. The night shift had removed several car loads of debris from the entry and had caused the top of the fall to be lowered. Within about fifteen minutes after appellee and his co-employes had begun the work of removing the fallen rock, William Ruff, the assistant mine manager, came to the place where they were engaged at work; up to this time the men had been at work under that part of the roof where the timbering had not been disturbed, and as some of the witnesses say, at about this time the appellee and his buddy were emerging from under the timbers and commenced to work under the exposed roof, and the assistant mine manager directed them to suspend work until he had examined the roof, which he did by climbing up on top of the fallen rock and sounding the roof with a pick handle. Some of the witnesses state that Ruff said, "The roof is fair;"

others state that he said it was all right to go ahead
and clean up; others that he said, "It sounds pretty
good, all right, go ahead;" none of which is denied by
Mr. Ruff, but he now says that it was drawn, a little
drummy on the edge, that it was soap-stone and more
brittle than slate and that he did not think there was
any danger of its falling immediately. The appellee
claims that relying upon the statements of Ruff, as to
the conditions of the roof, he proceeded with his work
and in about fifteen minutes thereafter the place in the
roof that had been sounded by Mr. Ruff fell upon ap-
pellee, badly injuring him.

The original declaration consisted of one common
law count, to which there were afterwards added six
statutory counts. The first, or common law count,
alleges that on July 17, 1911, and for some time there-
after, appellee had been in the employ of the defend-
ant as a timberman and slate shifter, and that by vir-
tue of his employment it became and was his duty to
assist in removing and cleaning up falls of slate on the
roadways in said mine, and on said day the assistant
mine manager of the defendant took the plaintiff to
said fall in said run-around for the purpose of having
him assist in the cleaning up and removal thereof, and
the assistant mine manager then and there inspected
said roof at said point and ascertained, or could have
done so by the exercise of ordinary care, that a lot
of loose material remained above said track at said
point, and that the same was likely to come down at
any time and injure those working thereunder, and
assured the plaintiff that the roof at said point was
secure and that it was safe to work thereunder and
clean up said fall, and directed the plaintiff to proceed
with said work. And the plaintiff further says that
relying upon the inspection said assistant mine man-
ager had made, and upon his superior knowledge of
conditions existing there, and his assurance of safety,
he proceeded to clean up said fall, and while so doing,

in the exercise of due care for his own safety, and without knowledge or means of knowing of the unsafe condition of the roof above him, a lot of said loose material, violently and with great force fell down to and upon him and permanently injured him in the back and other parts of his body, etc.

The first additional count charges that the defendant wilfully failed to make an examination of said dangerous place, through its mine examiner, within twelve hours preceding the morning of July 17th, by having such mine examiner carry with him a safety lamp and sound such dangerous place with a rod or bar.

The second additional count charges that the defendant wilfully failed, through its mine examiner, to inscribe with chalk in some suitable place, on the walls of said roadway, the month and the day of the month of his visit, within twelve hours preceding the morning of July 17th.

The third additional count charges that the defendant wilfully failed through its mine examiner to place a conspicuous mark at said dangerous roof as notice to all men to keep out, within to-wit, 12 hours preceding the morning of said 17th day of July, 1911.

The fourth additional count charges that the defendant wilfully failed, through its mine examiner, to take into his possession the entrance check of the plaintiff whose working place as aforesaid was dangerous, and to give such entrance check to the mine manager of the plaintiff before the plaintiff was permitted to enter said mine on the morning of July 17th.

The fifth count was withdrawn from the jury.

The sixth additional count charges that on July 17th the mine examiner of the said defendant reported said place of plaintiff in said mine dangerous, and entered his report thereof in a book kept and properly provided for that purpose, and that the defendant wilfully failed through its mine manager to withhold the entrance check of the plaintiff until he had advised the

400     APPELLATE COURTS OF ILLINOIS.

Grannon v. Donk Bros. Coal Co., 173 Ill. App. 395.

said plaintiff of said danger and instructed him not to go to work until same had been removed.

At the conclusion of plaintiff's evidence the defendant moved the court to direct the jury to find the defendant not guilty, and then entered its motion to disregard the first, second, third, fourth and sixth counts of plaintiff's amended declaration and also to disregard the fifth and seventh counts of plaintiff's amended declaration. The motion was allowed as to the fifth and seventh counts, which have not been abstracted, and denied as to the remainder of the counts. These motions, except as to the fifth and seventh counts, were renewed at the close of all of the evidence.

Counsel for appellant in their argument insist, First. That the defendant was not guilty of any wilful failure, as charged in the declaration. Second.—That appellee was violating the statute requiring him before commencing work to properly examine his roof, and having failed to make that examination he could not recover. Third.—That the evidence does not support the original or common law count of the declaration. Fourth.—That the court erred in modifying and refusing instructions of appellant. Fifth.—That the verdict is excessive.

As to the first additional count it is claimed that the roof was not dangerous, as it appeared just prior to the injury and was not determined as dangerous by the associates of the plaintiff who had examined it just before the fall, and to fail to observe it being in that condition was not a wilful failure; that the clod that had fallen was piled up to the roof, and the mine examiner could not get up to the roof immediately over this fall and examine it. It may be, that if the roof, which was left after the fall had taken place, was so obscured by the clod directly under it that the mine examiner could not reach it, and an examination thereof could not be made, that such failure would not be a wilful failure to examine the roof. It is next contended that the second additional count charges

that defendant, through its mine examiner, failed to inscribe with chalk in some suitable place on the walls of said roadway the month and the day of the month of his visit. It is true, as contended, that the mine examiner testified that he placed his visit mark and dangerous mark on the side of the entry, and this, so far as we have been able to observe, is not contradicted except by testimony of a negative character to the effect that those who testified to being there state that they did not see it, but it does not appear that they looked for it, except the plaintiff says he always looked for marks.

The third additional count charges that the mine examiner failed to place a conspicuous mark at the dangerous roof. The observation as above made was to the first additional count will apply with equal force to the averment of this count.

The fourth additional count charges that the mine examiner wilfully failed to take into his possession the check of appellee and deliver it to the mine manager; and the sixth additional count charges that the mine manager wilfully failed to withhold the entrance check of the plaintiff until he had advised the plaintiff of said danger, and instructed him not to go to work until the danger had been removed. We are unable to see how the violation of the statute as charged in the fourth and sixth counts could be the proximate cause of this injury.

However, as we view the facts in this case, we do not deem it necessary or important to determine whether the evidence shows a wilful failure to observe the statute as charged or not, as we think the original declaration consisting of a common law count is sustained by the evidence and sufficient to sustain a judgment. Where there is one good count of the declaration, to which the evidence is applicable, and which, when proven, is sufficient to support the judgment, then this is all that the law requires. It is said in the

402    Appellate Courts of Illinois.

Grannon v. Donk Bros. Coal Co., 173 Ill. App. 395.

case of Consolidated Coal Co. v. Scheiber, 167 Ill. 541, "From the view we take of the case it is unnecessary to examine the other counts of the declaration for if there is one good count to which the evidence is applicable, and which is sufficient to sustain the judgment, the error of the court, if any, in refusing to instruct the jury to disregard the other counts becomes harmless;" and this doctrine is fully sustained in the case of Swift & Co. v. Rutkowski, 182 Ill. 24, and other cases. We regard the evidence in this case as being more peculiarly applicable to the original declaration, and that it is sufficient to warrant the jury in finding a verdict thereunder.

It appears from the evidence in this case that on the morning of July 17th there had been a heavy fall in the run-around connected with the eleventh west entry of appellant's mine; that it was caused by the timber in the roof giving away at that particular place, and when the fall occurred it spread out beyond and to a point where the timbers were in place, and supporting thereof; that the night gang had removed several car loads of the debris from the entry; that at the usual time for the commencement of work in the morning the night gang were, at the direction of the assistant mine manager, relieved by the appellee and his associates, and after appellee had been at work for a few minutes the assistant mine manager, William Ruff came to the place where they were engaged, and up to that time appellee and his buddy had been at work under the timbers that protected the roof. Appellee says, "A short time after I come there Mr. Ruff came, he told me to clean the rail and push our car up; we shoved our car up there. Before we shoved the car up Ruff stopped us, told us to wait a minute and examined the roof." He sounded the roof with a pick handle. Appellee says, "He (Ruff) said it was all right. He said all right to go ahead and clean it up." Henry Lyles says that Ruff said, "Well, all I heard him say was the top was fair; I believe he said that."

James Boston says, "While Ruff was examining the roof he said it was all right, for us to go ahead and clean up; it sounds pretty good. Stein Dunskey says, "I saw Ruff there. He went on top to examine; after he had examined it he said all right, go ahead." These statements that are claimed to have been made by Ruff at the time are not denied. Ruff says, "When I climbed to sound the roof I had a pick handle and I told all to be quiet; I beat around the edges of the fall to see if it was dangerous or loose enough to fall." He says at that time appellee was about six feet away, and that he did not find anything there that indicated to him any danger of immediate fall. Again, Ruff says, on cross-examination, "It sounded drummy eastward about one foot and a half or two; I pronounced it drawn. I didn't tell them it was drawn; they knew it, I guess. I didn't tell them how big the piece was that sounded drummy; I could not tell how big it was, whether it was two feet or nine feet; it was a little drummy on the edge; it was soap-stone; that is more brittle than slate; it will break square through." Again, he says, when it is drummy that indicates that it is loose and when it is loose it is liable to fall; you cannot tell just when it will fall; it may fall right away and it may hold there for a while. You can have it sound drummy and know it is not going to fall immediately but it is liable to fall at any time; it never gets any tighter, it gets looser all the time. When it will fall depends on the nature of the top. Soap-stone is more liable to fall as a general rule. Soap-stone usually gives some indication of a fall. You can hear it pop and little pieces will fall, like falling snow. It will give away at the edges. There was no popping or any little flakes falling while I was there." It seems to us, from this testimony, that the jury was fully warranted in finding that at the time the assistant mine manager examined the roof, he ascertained that it was drummy and loose, and while he says that he did not think there was any immediate

404      APPELLATE COURTS OF ILLINOIS.

Grannon v. Donk Bros. Coal Co., 173 Ill. App. 395.

danger of falling, yet he also says that it was liable
to fall at any time, the substance being soap-stone was
more liable than any other to fall. It seems to us that
he knowing that this material was soap-stone and that
it was liable to fall at any time, and a part of it had
fallen, and at that time appeared to him to be drummy
and loose, that he was negligent in directing the men to
proceed to work under a roof in this condition. When
he discovered this condition he should have ordered
the work stopped and the roof taken down before any
one was allowed to go under it to work. To say the
least of it, such a condition existed as to warrant the
jury in finding that he was negligent. It appeared
that up to this time the appellee had been working
under the timbers that were supporting the roof in the
entry, and was about to move his car up under the roof
that fell but at the direction of the assistant mine
manager he waited until he (the mine manager) made
an examination of the roof and pronounced it all right,
and, as some of the witnesses say, directed appellee to
go ahead.

It is said that the appellee was negligent and barred
from a recovery because he did not make an examina-
tion for himself. This argument, however, was ap-
plied more particularly to the additional counts. The
question as to whether or not appellee was negligent
or not using due care for his own safety were ques-
tions of fact to be determined by the jury from all of
the circumstances surrounding the work, and whether
or not the appellee was justified in working under the
roof after the assistant mine manager had examined it
or whether he should have examined it for himself are
questions for the jury to determine. We do not think
that where a servant relies upon the assurance of the
master that the conditions are all right, and continues
to work, that he can be regarded as being guilty of
contributory negligence, or of assuming the risk. Con-
solidated Coal Co. v. Shepherd, 220 Ill. 123.

In the case of Gundlach v. Schott, 192 Ill. 512, the

Grannon v. Donk Bros. Coal Co., 173 Ill. App. 395.

Supreme Court says: "Plaintiff testified his employer said, 'It is all right; go ahead and put it on.' It is well settled that even though the plaintiff knew of the defect, if the master ordered him to proceed with the dangerous work he did not assume the risk of so doing unless the danger was so manifest that a person of ordinary prudence and caution would have incurred it. Even if a servant has some knowledge of attendant danger, his right of recovery will not be defeated, if, in obeying the order, he acts with the degree of prudence which an ordinarily prudent man would exercise under the circumstances. When the master orders the servant to perform his work the latter has a right to assume that the former, with his superior knowledge of the facts, would not expose him to unnecessary perils. The servant has the right to rest upon the assurance that there is no danger, which is implied by such an order. The master and servant are not altogether upon a footing of equality. The primary duty of the latter is obedience, and he cannot be charged with negligence in obeying an order of the master unless he acts recklessly in so obeying. Whether he acted thus recklessly in obeying his master's order, or whether he acted as a reasonably prudent person should act, are questions of fact to be determined by the jury." In this case we think it is a question of fact to be determined by the jury as to whether or not the appellee acted with reasonable prudence in proceeding with the work as directed by the master, and under the conditions observed by the master, and the assurances made by him, especially in view of the knowledge that the master then had, as it now develops, as to the liability of the roof to fall at any time.

It is urged that the court erred in refusing defendant's eighth instruction. It will be observed that this instruction undertakes by a statement of a chain of facts, to point out what would or would not constitute negligence. Besides such parts of this instruction as

406    APPELLATE COURTS OF ILLINOIS.

Grannon v. Donk Bros. Coal Co., 173 Ill. App. 395.

appellant was entitled to, as to the due care and caution required upon the part of the plaintiff and the negligence of the defendant were fully covered by his given instruction No. 9.

Next, it is claimed that the court erred in modifying defendant's 14th instruction by inserting the words, "And did not rely upon any assurances of safety made by Ruff." and says that this instruction is vicious, in that it assumes that Ruff made assurances of safety. We do not believe that the jury could have been misled by this modification. The fact that the defendant did give assurances of safety to the appellee was one of the specific allegations of the declaration. And by defendant's second instruction the jury are advised that it became necessary for the plaintiff to prove the specific acts of negligence charged. In considering the instructions they are to be taken and considered as one charge, and conceding that there was error in this modification, we do not think it could have prejudiced appellant, and was not such, if error at all, as to cause a reversal of the case. The instruction as presented was not good. It ignored appellee's claim that the master had assured appellee that the roof was safe. The court undertook to insert this idea in the instruction but in so doing left the instruction subject to criticism. We do not think that appellant can complain of this. The rule is, "That one who asks the court to give an improper instruction, cannot be heard to complain of the court's action in modifying it, although the court fails to make it good." Wibel v. Illinois Central R. R., 147 Ill. App. 192; Swift & Co. v. Rennard, 119 Ill. App. 180.

We do not think the court erred in refusing appellant's 17th instruction, as claimed, as we think it to some extent invaded the province of the jury; that it was for the jury to determine how the performance of a particular thing required by the statute would or would not constitute wilfulness. This instruction was not directed to the wilfulness charged in the declara-

tion but to the wilfulness of the mine manager. Under the views taken of this case, even if the instruction was not proper it could not affect the verdict.

The refusal to give instruction No. 18 is claimed as error but as this instruction is applicable to the whole declaration, the common law as well as the statutory counts, and as it undertakes to point out particular things he should do, or fail to do, to entitle him to recover, or what particular things he should do in the exercise of care, we think under the rulings of our courts that it invades the province of the jury. It omits some of the elements of plaintiff's claim. We do not think the refusal of this instruction was error.

The next claim made is that the verdict rendered is excessive. We appreciate that this is a large verdict but under the holdings of our court, unless it is of such magnitude as to show it to be the result of passion or prejudice, and not commensurate with the injuries sustained, then we would have no right to disturb it as the amount to be fixed is largely in the discretion of the jury. In this case the appellee's spine was injured, one of the vertebræ dislocated, and he was paralyzed from the hips down, without power to move the muscles, without sensation in the legs, poor circulation of the blood, no control over his bowels or urine, and no knowledge of their operation; not able to sit up or care for himself or to perform any labor of any kind. We are not able to say that the verdict of the jury is not warranted, and cannot disturb the verdict upon this account. From a careful examination of this record we are of the opinion that the jury was warranted in finding a verdict for the plaintiff, and that we have no power to disturb the verdict or judgment, and the judgment of the lower court is affirmed.

*Judgment affirmed.*