## NIKOLE DIMETRE v. RED WING SEWER PIPE COMPANY.[1]

October 9, 1914.

Nos. 18,751—(233).

**Rule of "gravel pit" cases not applicable.**

1. The rule of the "gravel pit" cases does not apply where the embankment consists of material of such adhesiveness, or so placed or supported, that it may reasonably be expected to withstand the effect and operation of the law of gravitation.

[1] Reported in 148 N. W. 1078.

---

Note.—Servant's assumption of risk of changing conditions of the working place during progress of the work, see notes in 19 L.R.A.(N.S.) 340; 28 L.R.A. (N.S.) 1267.

Assurance to servant of safety by master or coservant, see notes in 48 L.R.A. 542; 23 L.R.A.(N.S.) 1014; 30 L.R.A.(N.S.) 453.

**Servant relying on master's assurance of safety — contributory negligence.**

    2. Where the master directs the servant to perform specific work and assures him that he can do so in safety, if the servant, in reliance upon such assurance, proceeds to perform the work, he is usually not chargeable either with contributory negligence or with a voluntary assumption of the risk, unless the danger be so obvious and imminent and so apparent to the ordinary mind that it would be unreasonable for him to rely upon the assurances given him.

**Same — question for jury.**

    3. Whether it would be unreasonable for the servant to rely upon the assurances given him is a question for the jury, unless the court can say that reasonable minds could reach only one conclusion. The present case is within the rule requiring the question to be submitted to the jury.

Action in the district court for Goodhue county by the administrator of the estate of Andrew Naum, deceased, to recover $7,500 for the death of his intestate while in the employ of defendant. The answer alleged that the death of the intestate was caused by reason of his negligence or solely by reason of the risks and dangers incident to the business in which the deceased was then engaged. The case was tried before Johnson, J., who denied defendant's motion to dismiss the action and its motion for a directed verdict in its favor, and a jury which returned a verdict for $1,600 in favor of plaintiff. From an order denying its motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Affirmed.

*A. A. Tenner* and *F. M. Wilson,* for appellant.

*C. P. Diepenbrock* and *Mohn & Mohn,* for respondent.

Taylor, C.

Andrew Naum, an Albanian 18 years of age, while at work for defendant in its clay pit, was buried beneath a mass of clay and earth which fell from the bank or wall of the pit, and sustained injuries which resulted in his death. Plaintiff as administrator of his estate brought this action for damages and recovered a verdict. Defendant made the usual alternative motion for judgment notwithstanding the verdict or for a new trial and appealed from the order denying the motion.

Defendant contends that the facts bring the case within the rule established in the so-called "gravel pit" cases, and that plaintiff cannot recover, for the reason that Naum was chargeable with contributory negligence and had assumed the risks. Plaintiff contends that the instant case does not come within the rule applied in the "gravel pit" cases, for the reason that the bank in question was composed mainly of hard, adhesive and tenacious clay, not likely to give way or fall, and for the further reason that defendant's foreman with full knowledge of the attending conditions had assured Naum that it was safe to work at the foot of the bank and ordered him to do so.

The witnesses do not agree as to the height of the bank or wall of the pit at the place of the accident. Plaintiff's witnesses estimate it as about 15 feet; defendant's witnesses as at least 20 feet. From the bottom to a height of about seven feet, it consisted of "pipe clay" and was nearly perpendicular. Above this clay was a four or five inch layer of what is designated as "iron rock." Above the "iron rock" was a layer of sand, or sandy material, which sloped back considerably and was estimated by plaintiff's witnesses as between two and four feet in thickness. Above the sandy layer were about six feet of "brick clay" and common soil, the face of which was nearly perpendicular and projected two or three feet beyond the upper surface of the sandy layer. While the testimony discloses some common soil in this topmost layer, the quantity was evidently small, as the witnesses on both sides continually refer to this layer as "brick clay." During the noon hour on the day of the accident, the crew, of which Naum was a member, passed over the top and near the edge of the bank on their way to and from dinner, and observed a crack along the top four or five feet back from the edge and several feet in length. They made no examination of this crack and whether Naum saw it does not appear, except by inference from the fact that he passed by with the other members of the crew. They discussed the danger among themselves and then informed the foreman of the crack and that it was dangerous to work under that bank. The foreman went to the top of the bank and after making an examination told the crew that there was no danger and to proceed with their work. They did so. Late in the afternoon the overhanging

bank fell and Naum was caught beneath it and killed. The falling mass came wholly from the upper portion of the bank. The layers of "iron rock" and of "pipe clay" remained in place, showing that the slide was not caused by the work in which the crew were engaged during the afternoon. Some sand had dropped or trickled down during the afternoon but apparently not in sufficient quantities to attract attention. The hard and adhesive character of the so-called "brick clay" is indicated by the fact that after it had fallen to the bottom of the pit it still remained in large, hard chunks,—some of them so large that it required two or three men to lift them from the unfortunate Naum.

The embankments considered in the gravel-pit cases were composed of material likely to slide or fall in the absence of lateral support, and it was held that the workman is presumed to have "the knowledge which common observation forces on the most ordinary intellect," and to have known the effect and operation of the law of gravitation, and that by working upon or at the foot of such an embankment he took the chance of being injured in case it should fall. Olson v. McMullen, 34 Minn. 94, 24 N. W. 318; Pederson v. City of Rushford, 41 Minn. 289, 42 N. W. 1063; Swanson v. Great Northern Ry. Co. 68 Minn. 184, 70 N. W. 978; Reiter v. Winona & St. Peter R. Co. 72 Minn. 225, 75 N. W. 219; Kletschka v. Minneapolis & St. Louis R. Co. 80 Minn. 238, 83 N. W. 133; O'Neil v. Great Northern Ry. Co. 101 Minn. 467, 112 N. W. 625. But where the embankment consists of material of such adhesiveness, or so placed or supported, that it may reasonably be expected to withstand the effect and operation of the law of gravitation, the rule does not apply. Hill v. Winston, 73 Minn. 80, 75 N. W. 1030; Lund v. E. S. Woodworth & Co. 75 Minn. 501, 78 N. W. 81; Kohout v. Newman, 96 Minn. 61, 104 N. W. 764; Wolf v. Great Northern Ry. Co. 72 Minn. 435, 75 N. W. 702.

Where the master directs the servant to perform specific work at a specific place and assures him that he can do so in safety, and the servant, pursuant to such order and in reliance upon such assurance, proceeds to do the work and is injured, his conduct does not, ordinarily, amount either to contributory negligence or to a voluntary

assumption of the risks incident to the performance of the work. The servant is usually justified in assuming that the knowledge, experience and judgment of the master are superior to his own; and, even if the undertaking appear to him to be hazardous, he may rely upon the assurances of the master, presumably based upon such superior knowledge, without being chargeable either with contributory negligence or with a voluntary assumption of the risks, unless the danger be so obvious and imminent and so apparent to the ordinary mind that it would be unreasonable to rely upon the master's assurances of safety. Chicago Anderson Pressed Brick Co. v. Sobkowiak, 148 Ill. 573, 36 N. E. 572; Illinois Steel Co. v. Schymanowski, 162 Ill. 447, 44 N. E. 876; Consolidated Coal Co. v. Shepherd, 220 Ill. 123, 77 N. E. 133; Keegan v. Kavanaugh, 62 Mo. 230; Stephens v. Hannibal & St. J. R. Co. 96 Mo. 207, 9 S. W. 589, 9 Am. St. 336; Monahan v. Kansas City Clay & Coal Co. 58 Mo. App. 68; Swearingen v. Consolidated Troup Mining Co. 212 Mo. 524, 111 S. W. 545; Brown v. Lennane, 155 Mich. 686, 118 S. W. 581, 30 L.R.A.(N.S.) 453; McKee v. Tourtellotte, 167 Mass. 69, 44 N. E. 1071, 48 L.R.A. 542; Central Coal & Iron Co. v. Thompson, 31 Ky. Law R. 276, 102 S. W. 272; Bush v. West Yellow Pine Co. 2 Ga. App. 295, 58 S. E. 529; Starr v. Kreuzberger, 129 Cal. 123, 61 Pac. 787, 79 Am. St. 92; Daley v. Schaaf, 28 Hun (N. Y.) 314; Chadwick v. Brewsher, 15 N. Y. Supp. 598; Baccelli v. New England Brick Co. 138 App. Div. 656, 122 N. Y. Supp. 856; Van Dusen Gas & Gasoline Engine Co. v. Schelies, 61 Oh. St. 298, 55 N. E. 998; Wurtenberger v. Metropolitan St. Ry. Co. 68 Kan. 642, 75 Pac. 1049; Lane Brothers & Co. v. Bott, 104 Va. 615, 52 S. E. 25; Allen v. Gilman, McNeil & Co. 127 Fed. 609; Haas v. Balch, 56 Fed. 984, 6 C. C. A. 201; Cook v. St. Paul, M. & M. Ry. Co. 34 Minn. 45, 24 N. W. 311; Nelson v. St. Paul Plow Works, 57 Minn. 43, 58 N. W. 868; Anderson v. Pitt Iron Mining Co. 103 Minn. 252, 114 N. W. 953; Nustrom v. Shenango Furnace Co. 105 Minn. 140, 117 N. W. 480; Manks v. Moore, 108 Minn. 284, 122 N. W. 5; Arnold v. Dauchy, 115 Minn. 28, 131 N. W. 625.

In the instant case the presence of the sandy layer in the embankment, the projection of the upper layer of brick clay beyond the sandy layer, and the existence of the crack along the top and four or five feet from the edge of the upper layer, pointed to danger and excited apprehension on the part of the crew. On the other hand the material of which the bank was composed, except the sandy layer, was hard and adhesive, and had remained in its then position for some time. The work in which the crew were engaged did not undermine the bank or change its condition. According to the testimony of the superintendent it was the duty of the foreman to look out for dangerous places, tell the men when there was danger, and see that they did not get hurt. Defendant, in effect, undertook to ascertain when danger was impending and to give the men timely warning. When the men expressed their apprehensions to the foreman, he examined both the bank and the crack, and then told them that the bank was safe and to "go to work there." They relied upon this assurance, and proceeded with the work of loading the pipe clay upon the "skip" for removal from the pit, and were so engaged at the time of the accident. Naum, a youth of little experience and unable to talk English, was naturally influenced to some extent by the conduct of the other members of the crew.

Whether, in view of all the circumstances, the danger was so obvious and imminent and so apparent to the ordinary mind that Naum could not reasonably rely upon the assurances of safety given by the foreman, was a question for determination by the jury and not by the court. Such questions can be determined by the court only when the court can say that all reasonable minds would concur in the conclusion reached. We cannot say that this is such a case and the order appealed from is affirmed.