## IRVING JOHN SCHAEFER v. MARSHALL MILLING COMPANY.[1]

May 19, 1916.

Nos. 19,614—(40).

**Judgment notwithstanding verdict.**

1. The testimony of plaintiff concerning the circumstances under which he was injured is not so inherently unreasonable, nor so conclusively contradicted by the testimony of other witnesses, that the court was warranted in ordering judgment for defendant notwithstanding the verdict for plaintiff.

**Same — questions for jury.**

2. Nor can the judgment of *non obstante veredicto* be sustained upon the grounds that the record points to either plaintiff's contributory negligence or to his assumption of the risk as a legal conclusion. Both defenses were proper questions for the jury.

**Same — evidence of negligence.**

3. The negligence alleged has sufficient support in the evidence so that the court could not properly disregard the verdict for plaintiff and enter judgment for defendant.

[1]Reported in 157 N. W. 993.

Note.—As to servant's assumption of risk in obedience to orders without fully appreciating the danger see note in 4 L.R.A.(N.S.) 834.

The view that direct command makes assumption of risk question of fact only is set forth in note in 30 L.R.A.(N.S.) 442.

**Vice principal — change of theory on appeal.**

> 4. Since the trial was conducted without a suggestion that the person whose orders plaintiff was to obey was not defendant's *alter ego*, and the court's charge that such person was a vice principal was acquiesced in, it is now too late to claim that the fellow-servant doctrine is applicable; nor does the record establish its applicability as a matter of law.

Action in the district court for Lyon county to recover $7,500 for personal injury received by plaintiff minor while in the employ of defendant. The answer alleged that plaintiff knew and appreciated the dangers of using the tools and instrumentalities maintained in defendant's grain elevator in the condition they were at the time of the accident, including the wire cable, elevator and chute referred to in the complaint, and that the injury sustained was contributed to by plaintiff's own negligence. The case was tried before Nelson, J., and a jury which returned a verdict for $350. Defendant's motion for judgment notwithstanding the verdict was granted. From the judgment entered pursuant to the order for judgment, plaintiff appealed. Reversed and remanded with direction to enter judgment upon the verdict.

*James H. Hall,* for appellant.

*William A. Tautges,* for respondent.

HOLT, J.

Plaintiff had a verdict, but upon defendant's motion judgment was ordered in its favor. From the judgment rendered accordingly plaintiff appeals .

The injuries for which the jury awarded damages were received while plaintiff, then 18 years old, worked for defendant as a helper in a grain elevator adjacent to a railroad track at Marshall, Minnesota. In the elevator is a so-called leg—an enclosed wooden chute or box, the inside dimension of which is 9½ by 13½ inches, extending from the grain pit at the bottom to the top floor and provided inside with an endless belt upon which are fastened metal cups to carry the grain from the pit to the top and there discharge it into a movable spout, which may be diverted to different bins by means of a quarter-inch wire cable running to the ground floor. Whether this leg stands straight or slightly

slanting does not appear; however, upon what is termed the front side is an opening the width of the leg and about 30 inches long. A door or cover is fitted into this opening and held in place by fasteners. The wire cable runs outside the leg for 20 feet above the ground floor, then enters the leg and runs inside some 80 feet to the top.

Plaintiff's version of the occurrence is this: On the morning of May 1, 1913, while he and Mr. Plantz, the foreman, were unloading a car of grain by the use of a power shovel, a rattling noise was heard, and Plantz at once started for the elevator, bidding plaintiff to follow. As they aproached the elevator leg, from which the noise seemed to proceed, Plantz directed plaintiff to take off the cover, but a swinging spout being in the way plaintiff must first move that; in the meantime Plantz removed the cover on the leg, and, as plaintiff approached, the wire cable, or part thereof, appeared on top of the rapidly moving grain cups, and Plantz ordered plaintiff to grab the wire. He instantly obeyed, but, in some way, the little finger of his left hand was caught in the cable, which must have become snarled or fastened to the cups, and the arm was jerked up into the elevator leg with the result that the first joint of the finger was pulled off. Plantz agreed that plaintiff was injured in the attempt to remove the cable, but insists that plaintiff took off the cover without being directed so to do, and that when Plantz noticed plaintiff's purpose to grab the cable he at once yelled out not to attempt it, and, as soon as he perceived that plaintiff would not desist, he hurried to turn off the power, for he knew it to be very dangerous to touch the wire while the machinery was in motion.

From the memorandum of the learned trial judge it appears that he regarded the story of plaintiff so unreasonable and so contradicted by other testimony in the case that it afforded no support for a verdict in his favor; and also that plaintiff was guilty of contributory negligence and had assumed the risk. In addition to the ground assigned by the court for judgment notwithstanding the verdict, defendant here advances two more, namely (a) that no negligence was proven against defendant, and (b) that even if the jury were warranted in finding that plaintiff was ordered to take hold of the cable, and that it was negligence to give such order under the circumstances, there could be no recovery

because Plantz was a fellow servant and not a vice principal in giving the order.

We fail to find any valid legal basis for holding the testimony of plaintiff so inherently unreasonable or so conclusively contradicted by that of others that the jury may not be permitted to find it true. Plantz and plaintiff were the only persons present at the accident. We have therefore one man's word against that of another and it is for the jury, and not the court, to say which shall be accepted as a verity in the lawsuit. We have not overlooked the testimony of the doctor, who treated plaintiff, wherein the latter is made to admit that no one was to blame but himself, nor is the fact lost sight of that, after recovery from the injury, plaintiff resumed his employment with defendant and continued therein during a whole year without charging the mishap to any one or claiming compensation therefor. These circumstances were also for the jury to weigh, and it was permissible for the jury therefrom to infer that the desire to retain the job or ignorance of his legal rights accounted for plaintiff's silence. The casual assumption of blame made to the doctor while the wounds were being dressed may well be regarded as of little probative value.

We are not able to adopt the view that contributory negligence here appears as a matter of law. Plaintiff was but 18 years of age, and had worked only a month and a half in the elevator before being hurt. He was a helper to Mr. Plantz and had to obey his orders. If the young man's story be true, and of that the jury judged, he knew nothing at that time of the running of the grain elevating machinery and had taken no part in its operation, although he had observed the movements of the grain cups in the elevator leg at some time when the cover had been taken off. It can hardly be claimed that to such a young person the attempt to remove a piece of wire cable, rattling on top of the grain cups, appeared so dangerous that he ought not, in the exercise of ordinary prudence, to have obeyed the order of his superior to grab it.

It is quite clear that the risk from which plaintiff suffered injury was not one of the ordinary risks he assumed in becoming and remaining a helper in the elevator. If he assumed any risk it was the risk incurred in obeying the specific order to grab the cable. It arose out of an unexpected situation. Here again we cannot affirm, as a proposition of

law, that a person of plaintiff's age and experience ought to have understood and appreciated the consequences of the act he was suddenly directed to perform. It is suggested that there is no evidence that plaintiff did not know and appreciate the risk, but defendant forgets that it had the burden of proving assumption of risk as well as contributory negligence. Manifestly both the alleged contributory negligence and assumption of risk were, upon this record, proper jury questions. Small v. Brainerd Lumber Co. 95 Minn. 95, 103 N. W. 726; Dimetre v. Red Wing Sewer Pipe Co. 127 Minn. 132, 148 N. W. 1078.

Nor can defendant's contention that its negligence was not proven be sustained. Plantz was in charge of the elevator and remedied anything that went wrong in its operation. The negligence alleged is, in brief, that, without stopping the machinery, plaintiff, inexperienced and not warned of the danger, was directed to remove the parted cable. From the testimony of Plantz it is evident that it was dangerous to attempt to remove the wire while the machinery was running. If a master, with knowledge of the dangerous character of an act he desires done, commands a young and inexperienced servant to perform it, without apprising him of the danger or giving adequate instructions how to do it with safety, the master may properly be found guilty of actionable negligence. Small v. Brainerd Lumber Co. supra.

The court instructed the jury that Plantz was defendant's vice principal. The correctness of the instruction was not questioned in the least, nor was it intimated, at any stage of the trial, that the fellow-servant doctrine had any application to the issues in the case. It is rather late now to invoke such defense. Moreover, the record does not, in our opinion, furnish any ground for saying that Plantz conclusively appears to have been a fellow servant of the plaintiff. Indeed the contrary stands out clearly.

While a verdict for defendant might have appealed to our idea of a just result, we must not forget that where, as in this instance, the defeated party does not ask for a new trial, but insists on judgment *non obstante veredicto*, he is not entitled thereto if there be any evidence reasonably tending to support the verdict. This verdict has such support.

The judgment is reversed and the cause remanded with direction to enter judgment upon the verdict.